[Crim. No. 19515. Mar. 15, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM HARMON WINDHAM, Defendant and Appellant.

**COUNSEL**

Peter J. Paoli, under appointment by the Supreme Court, and Stuart W. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Karl J. Phaler and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, J.,**\*—Contrary to an earlier conclusion reached by this court in *People* v. *Sharp* (1972) 7 Cal.3d 448 [103 Cal.Rptr. 233, 499 P.2d 489], the United States Supreme Court has held that a defendant in a state criminal trial has a federal constitutional right to represent himself without counsel if he voluntarily and intelligently elects to do so. (*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].) We are now called upon to determine how the high court's mandate will be implemented, specifically—prior to what point during pending criminal proceedings must the *constitutional* right of self-representation be asserted if it is to be exercised? We conclude, for reasons which follow, that when a defendant has elected to proceed to trial represented by counsel and the trial has commenced, it is thereafter within the sound discretion of the trial court to determine whether such a defendant may dismiss counsel and proceed *pro se.*

Defendant William Harmon Windham was convicted by a jury of assault by means of force likely to produce great bodily injury. (Pen. Code, § 245, subd. (a).) On appeal he contends that his midtrial motion to represent himself was erroneously denied and that such constitutional error is reversible per se.

The facts underlying defendant's conviction are only relevant to the question before us insofar as those facts shed light on defendant's motivations in requesting that he be allowed to represent himself for the remainder of the trial. It is sufficient for our purposes to state that defendant was forcibly ejected from a drinking establishment by the brother of William Meyers, the victim of the assault. When William later stepped outside to search for a missing wristwatch crystal, defendant surprised him and inflicted a brutal beating, knocking him unconscious and almost tearing one of his eyes from its socket. Defendant's theory

---

\*Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council.

was self-defense. He testified that he was attacked by the Meyers brothers and kicked William only to escape their assault.

Prior to the commencement of the third and final day of testimony,[1] defendant moved to represent himself.[2] Although he acknowledged that his counsel was a competent attorney, defendant expressed concern that on several occasions counsel had confused the names of individuals involved in the case. More significantly, defendant expressed an opinion that his attorney had been unable to elicit particular testimony which would have more convincingly established the theory of self-defense.[3]

No opposition to defendant's motion was presented by the People and defense counsel even appeared to acquiesce in assuming the role of advisory counsel to assist defendant had the self-representation request been granted. After considering the arguments presented in support of the motion by both defendant and defense counsel the court denied the request principally on the ground that it came at too late a stage of the proceedings.

In *People* v. *McDaniel* (1976) 16 Cal.3d 156 [127 Cal.Rptr. 467, 545 P.2d 843], we held that the *Faretta* rule was to be applied prospectively and therefore was the effective rule solely "in those cases wherein an accused sought or seeks to assert his right of self-representation in a trial which has commenced or will commence after June 30, 1975, the date upon which the decision in *Faretta* was filed." (*Id.,* at p. 168, fn. omitted.) Defendant's trial commenced on October 14, 1975. Accord-

---

[1] At the close of the previous day's proceeding defendant had been undergoing cross-examination by the prosecutor. He was the final witness for either side. Defendant makes no assertion that had he been permitted to represent himself he would have attempted to call any other witnesses.

[2] During the in-chambers hearing on defendant's motion, the terms "self-representation," "co-counsel," and "assisting attorney" were used in a loose fashion thereby presenting a less than model record as to precisely what status defendant was seeking. However, taken as a whole the record adequately reflects that defendant sought to represent himself and that the request was denied by the trial court.

[3] Defendant stated in part: "I think he's very able and I think he's a good attorney, but I think, you know, when you don't feel well, you just don't act your best. And this is my life, and if I get convicted, I'm going to go to jail. And so far, it looks to me—I haven't see [*sic*] where they have presented anything in my behalf. And from what little bit of material I have been able to see already, it seems to me from the questioning of the witnesses there could have been a lot more brought out that wasn't and that should have been. I am acting in self-defense and I can't see where this is—where the jury even has any idea that this is self-defense. It looks to me like it is me just picking on a little old man, and that is not so. There is other people involved. I was fighting with a lot of other people, and I think that should be brought out . . . ."

ingly, although *Faretta* was not expressly mentioned during the hearing on defendant's motion, we assess the trial court's ruling based on our interpretation of the *Faretta* mandate. As noted by Mr. Justice Blackmun in his dissenting opinion, the high court's decision was rather nonspecific and left open a considerable number of unanswered questions, the issue before us among them. (See *Faretta v. California, supra,* 422 U.S. 806, 852 [45 L.Ed.2d 562, 591], Blackmun, J. dissenting.)

The timeliness of a midtrial motion for self-representation in the post-*Faretta* era is an issue of first impression in California. Moreover, because a constitutionally based right of self-representation was not recognized in California prior to *Faretta,* we must look elsewhere for assistance in delineating appropriate guidelines for implementation of this recently pronounced right.

Several other jurisdictions have had previous experience with a constitutionally founded right of self-representation. For example, in *Faretta* the Supreme Court noted that the United States Court of Appeals for the Second Circuit has followed such a rule for a number of years. (E.g., *United States v. Plattner* (2d Cir. 1964) 330 F.2d 271; *United States v. Denno* (2d Cir. 1965) 348 F.2d 12, 15, cert. den. *sub nom. DiBlasi v. McMann* (1966) 384 U.S. 1007 [16 L.Ed.2d 1020, 86 S.Ct. 1950].) In fact, the high court's own analysis of the issue closely paralleled that of the *Plattner* court. (Compare *Faretta* at pp. 812-817 [45 L.Ed.2d at pp. 568-572] with *Plattner* at pp. 274-275.) In *United States v. Denno, supra,* 348 F.2d 12, 15, the Second Circuit confronted the precise issue before us in the instant case, holding: "The right of a defendant in a criminal case to act as his own lawyer is unqualified if invoked prior to the start of the trial. [Citations.] Once the trial has begun with the defendant represented by counsel, however, his right thereafter to discharge his lawyer and to represent himself is sharply curtailed. There must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to the trial judge's assessment of this balance. [Citations.]"

*Denno* pre-dated *Faretta* and we are not unmindful that it may be contended that *Faretta* diminished the persuasive authority of that decision. Significantly, however, the Second Circuit has had occasion to reassess its view on the matter in light of *Faretta* and has concluded: "The recent Supreme Court decision, *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), casts no pall on our [*Denno*] ruling.

*Faretta* does not involve motions made after the commencement of trial and in that decision the Court cited (without disapproval) [*Denno*] which does. *Faretta, supra,* at 817, 95 S.Ct. at 2532, 45 L.Ed.2d at 571. Thus we adhere to [*Denno*]. Subsequent application of its rule indicates that the reason for the request, the quality of the counsel representing the party, and the party's prior proclivity to substitute counsel are all appropriate criteria to be factored into the balance. See *United States* v. *Catino,* 403 F.2d 491, 497-498 (2d Cir. 1968), *cert. denied,* 394 U.S. 1003, 89 S.Ct. 1598, 22 L.Ed.2d 780 (1969); *United States* v. *Ellenbogen,* 365 F.2d 982, 988-989 (2d Cir. 1966), *cert. denied,* 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795 (1967)." (*Sapienza* v. *Vincent* (2d Cir. 1976) 534 F.2d 1007, 1010.)

The rule followed in the Second Circuit has also been adopted in at least two other jurisdictions. In a pre-*Faretta* decision, the New York Court of Appeals, that state's highest tribunal, held that a *pro se* motion was timely because it had been presented prior to the prosecutor's opening statement. (*People* v. *McIntyre* (1974) 36 N.Y.2d 10, 17-18 [364 N.Y.S.2d 837, 324 N.E.2d 322].) Restatement of the *McIntyre* rule in a post-*Faretta* decision indicates that the New York Court of Appeals continues to adhere to the same timeliness requirement. (See *People* v. *Reason* (1975) 37 N.Y.2d 351, 354 [372 N.Y.S.2d 614].) In addition, the Arkansas Supreme Court, citing *McIntyre,* has held that such a rule is consistent with *Faretta.* (*Barnes* v. *State* (1975) 258 Ark. 565 [528 S.W.2d 370, 374]; see *Mosby* v. *State* (1970) 249 Ark. 17, 22-24 [457 S.W.2d 836, 839-840].) Finally, we have been cited no post-*Faretta* decision nor has our research revealed any in which a court has held that a defendant retains an unequivocal right of self-representation once he proceeds to trial represented by counsel.[4]

The experience of other jurisdictions in dealing with the procedural implementation of a constitutionally based right of self-representation demonstrates that the requirement of a pretrial motion to that effect is a workable and appropriate predicate to the exercise of the *Faretta* right. ■ We hold therefore that in order to invoke the constitutional-

[4]Legal commentators have, however, shown less than overwhelming approval of the pretrial/midtrial distinction. (E.g., Grano, *The Right to Counsel; Collateral Issues Affecting Due Process* (1970) 54 Minn.L.Rev. 1175, 1181-1184; Recent development, *Criminal Defendants at the Bar of Their Own Defense—Faretta v. California* (1975) 13 Am.Crim.L.Rev. 335, 357-358; Note, *The Right to Defend Pro Se in Criminal Proceedings* (1976) 37 Ohio St.L.J. 220, 232-235.

ly mandated unconditional right of self-representation a defendant in a criminal trial should make an unequivocal assertion of that right within a reasonable time prior to the commencement of trial.[5] Accordingly, when a motion to proceed *pro se* is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be. Furthermore, the defendant's "technical legal knowledge" is irrelevant to the court's assessment of the defendant's knowing exercise of the right to defend himself. (*Faretta* v. *California, supra,* 422 U.S. 806, 836 [45 L.Ed.2d 562, 582].) ■ However, once a defendant has chosen to proceed to trial represented by counsel, demands by such defendant that he be permitted to discharge his attorney and assume the defense himself shall be addressed to the sound discretion of the court. When such a midtrial request for self-representation is presented the trial court shall inquire *sua sponte* into the specific factors underlying the request thereby ensuring a meaningful record in the event that appellate review is later required. Among other factors to be considered by the court in assessing such requests made after the commencement of trial are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion. Having established a

[5] Our imposition of a "reasonable time" requirement should not be and, indeed, must not be used as a means of limiting a defendant's *constitutional* right of self-representation. We intend only that a defendant should not be allowed to misuse the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice. For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request. In such a case the motion for self-representation is addressed to the sound discretion of the trial court which should consider relevant factors such as whether or not defense counsel has himself indicated that he is not ready for trial and needs further time for preparation. Thus if the reason why a defendant makes a request for self-representation in close proximity to trial is because he disagrees with his appointed counsel's desire for a continuance, some delay may be necessary whether or not the defendant's motion is granted. In such a case the very reason underlying the request for self-representation supplies a reasonable justification for the delayed motion. Furthermore, as defense counsel himself seeks a continuance for the purpose of further trial preparation it would be illogical to deny a motion for self-representation under such circumstances simply because the motion is made in close proximity to trial. There may be other situations in which a request for self-representation in close proximity to trial can be justified. When the lateness of the request and even the necessity of a continuance can be reasonably justified the request should be granted. When, on the other hand, a defendant merely seeks to delay the orderly processes of justice, a trial court is not required to grant a request for self-representation without any ability to test the request by a reasonable standard.

record based on such relevant considerations, the court should then exercise its discretion and rule on the defendant's request.[6]

■ Assessment of the record in the present case reveals no pretrial request by defendant that he be permitted to represent himself. The absence of such a request amounts to a waiver of the unconditional right to proceed by way of self-representation. Consequently the midtrial motion for self-representation was addressed to the sound discretion of the trial court. We find no abuse of discretion in the trial court's denial of the motion. The sole reason put forth by defendant to support his request was the claim that his admittedly competent counsel had been unable to present a stronger case on the theory of self-defense.

It is no small wonder that defense counsel had a difficult task in presenting such a defense. Testimony of two passersby who witnessed the assault presented a picture of a brutal beating during which defendant savagely and repeatedly kicked Meyers as he lay helplessly on the ground. When defense counsel attempted to question the eyewitnesses in order to ascertain if Meyers had made any threatening movements or struck any blows against defendant during the incident the eyewitnesses made it abundantly clear that Meyers' only movements were involuntary, the result of defendant's repeated blows to his body. Finally, defendant intentionally attempted to force both of Meyers' eyeballs from their sockets. In light of such evidence, defense counsel attempted to deemphasize that testimony relating to the extent of the assault. In fact, it may only be by happenstance that we review a conviction for aggravated assault rather than a conviction for murder.

---

[6]We decline to mandate a rule that a trial court must, in all cases, state the reasons underlying a decision to deny a motion for self-representation which is based on nonconstitutional grounds. Although we are of the view that such a procedure is the preferred practice, our recent decision in *People* v. *Edwards* (1976) 18 Cal.3d 796 [135 Cal.Rptr. 411, 557 P.2d 995], leads us to conclude that such a strict and unbending rule is unnecessary in the present context. In *Edwards,* we declined to impose on trial courts an express requirement that they state the reasons for denying recommended probation because the record on appeal from such a ruling affords an adequate basis on which to determine the merits of a claim that the ruling was an abuse of discretion. In the instant case we impose a requirement that trial courts confronted with nonconstitutionally based motions for self-representation inquire *sua sponte* into the reasons behind the request. Thus, as in the probation context, there should be a sufficient record on appeal in such cases in order to sufficiently evaluate alleged abuses of discretion when motions for self-representation are denied.

Moreover, defendant's request came at an exceedingly late stage of the trial. Denial of the motion for self-representation resulted in nothing more than preventing defendant from addressing the jury during closing argument. Defendant had already presented his own version of the incident on direct examination. In view of defense counsel's statement to the court that defendant did not respond to questions well, but could instead present his case more effectively to the jury in his own narrative, denial of the motion merely precluded defendant from presenting material to the jury while not under oath or subject to cross-examination.

The rationale underlying the Supreme Court's decision in *Faretta* is not difficult to understand. Put quite simply it is that the state may not constitutionally prevent a defendant charged with commission of a criminal offense from controlling his own fate by forcing on him counsel who may present a case which is not consistent with the actual wishes of the defendant. We do not think that our decision in the present case nor the procedural rule we have set forth herein conflict with that rationale in any way.

■    In addition to the *Faretta* issue, defendant also contends that the trial court erred by refusing to instruct the jury that intoxication was a defense. He argues that "assault with intent to commit bodily harm" requires that the defendant specifically intend to commit harm, and thus negation of such specific intent by proof of voluntary intoxication would constitute a valid defense. Irrespective of the merit of defendant's statement of law, it is totally inapposite to the present case. First of all, the trial court never refused an instruction on intoxication as defendant asserts for a request to give such an instruction was never made. The court did, however, properly instruct the jury that voluntary intoxication was not a defense. (CALJIC Nos. 4.20, 4.22.) Defendant was never charged with assault with intent to commit bodily harm. The information simply charged defendant with, inter alia, assault "by means of force likely to produce great bodily harm." The jury was so instructed and this is the offense of which defendant now stands convicted. It is well settled that assault by means of force likely to produce great bodily harm is a general intent crime to which intoxication is not a valid defense. (*People v. Parks* (1971) 4 Cal.3d 955, 959-960 [95 Cal.Rptr. 193, 485 P.2d 257]; *People v. Hood* (1969) 1 Cal.3d 444, 452-459 [82 Cal.Rptr. 618, 462 P.2d

370]; *People* v. *Martinez* (1973) 31 Cal.App.3d 355, 359 [107 Cal.Rptr. 284].) Therefore, the court's instructions as to intoxication were correct.

The judgment is affirmed.[7]

Tobriner, Acting C. J., Mosk, J., Clark, J., Richardson, J., and Sullivan, J.,* concurred.

---

[7]Because we discern no error and affirm the judgment it is unnecessary to determine by what standard of reversible error the erroneous denial of a *Faretta* motion should be judged. In addition, we express no opinion as to the rules applicable when a defendant initially waives counsel, proceeds to trial *pro se,* and then seeks to withdraw his waiver in order that an attorney may be appointed to represent him.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.