[No. A065799. First Dist., Div. Four. Aug. 15, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL RAY ROGERS, Defendant and Appellant.

COUNSEL

Janice Wellborn, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

PERLEY, J.—Michael Ray Rogers (appellant) appeals from a judgment of conviction following a jury verdict finding him guilty of attempted voluntary

manslaughter and assault with a firearm and finding that he used a firearm in the commission of the offenses. (Pen. Code, §§ 664/192, subd. (a), 245, subd. (a)(2), 12022.5.) Appellant admitted a prior serious felony conviction. (Pen. Code, § 667.) He contends that the trial court abused its discretion in denying his *Faretta* motion (*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]). We affirm.

## FACTS

On September 3, 1993, John Davey, a wharfinger for the Port of San Francisco, was in the process of posting notices on boats docked illegally at Islais Creek. Davey was accompanied by two police officers. Officer Neybert was videotaping the posting to document that notices were given in the event of a court challenge. Prior to approaching appellant's boat, Officer Parenti saw appellant looking over at them as they posted a notice on a boat, but appellant subsequently disappeared from view. When they arrived at appellant's boat, they noticed appellant coming up out of the hatch of his boat. Appellant pointed a flare gun at Davey and the officers. Appellant told them: "This is a flare gun and don't think I won't use it." Appellant immediately fired the gun, grazing Davey in the chin.

Appellant gave a statement to the police, a tape recording of which was played for the jury. Appellant told the police that he shot Davey because he believed that Davey was going to steal his boat. Appellant further told the police that San Francisco Port officials had previously taken one of his boats.

## DISCUSSION

 Appellant contends that the trial court erroneously denied his *Faretta*[1] motion. We conclude that the error in denying the motion was harmless.

Appellant initially made his *Faretta* motion during a *Marsden*[2] hearing which was held immediately prior to jury selection. Appellant informed the court that he had not had access to the law library and hence would need a week to prepare for trial. The trial court asked defense counsel whether he had subpoenaed witnesses, performed legal research, and represented appellant according to professional standards. Defense counsel stated that he had and appellant acknowledged that defense counsel had "done everything

---

[1]*Faretta* v. *California, supra,* 422 U.S. 806 (defendant has federal constitutional right to represent himself in a criminal trial if he voluntarily and intelligently elects to do so).

[2]*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (requires that the court permit a defendant to state the reasons why he believes a court appointed counsel should be discharged).

within the bounds of the code of ethics and everything to assist me" but that they had "profound" disagreements on how the case should proceed. The trial court denied the *Marsden* motion and took the *Faretta* motion under submission. The trial court thereafter proceeded with jury selection. During a recess of the voir dire proceedings, the trial court informed the parties that it was prepared to rule on appellant's *Faretta* motion. The following colloquy occurred: "[THE COURT]: It is my understanding you still want to represent yourself, now that you have seen what is going on out there, have you had a chance to reflect? [¶] [THE DEFENDANT]: I am far more comfortable with Mr. Hickman [defense counsel]. My understanding of the process has been, I have never been all the way to a jury trial, and so, therefore, I have faced this with extreme trepidation and I am much more comfortable with Mr. Hickman than I was before. [¶] [THE COURT]: So you formally withdraw your motion then? [¶] [THE DEFENDANT]: I simply have to wait and see. I refuse to recommit [*sic*] myself on that. [¶] [THE COURT]: Well, are you withdrawing it, at least at this time? [THE DEFENDANT]: At this time, yes, I will do so. [¶] [THE COURT]: In the future, if you want to make it again, you can make it any time you want. I am not precluding you from making it. If it is withdrawn, the Judges won't rule usually on things that are withdrawn. You have a right to withdraw it. [¶] [THE DEFENDANT]: I understand that. I withdraw it at this time." Jury selection was subsequently completed and the jury was sworn.

The following day, appellant again made a *Faretta* motion. He stated that he "[did] not see that much of a necessity for preparation. I believe that it can be done within the parameters of when the trial ends and being able to get into the law library for any research I may need to do. [¶] I don't like the situation but if there is that much of a distrust, I consider so much is at stake. Unfortunately, I got myself into this horrible mess and I may be the best person to get myself out of it. That is the fear I have got. I don't like it . . . I believe the law process works right, but if you have any kind of a distrust, it can somehow work against you. [¶] I am sure that Mr. Hickman is doing what he considers best. It is to be no reflection[] upon the man's abilities, I am sure that he knows his business, but our differences are just that profound that, that is just all I can say, it is that profound." The trial court denied the motion: ". . . The Court has visited this matter, I have reviewed the case law. We are ready for the opening statements at this time. The Court has discretion. . . . [I]t must consider the timeliness of the motion, the reasons that the defendant wants to proceed in pro per. And having weighed and considered all of these matters, I am going to deny the *Faretta* motion."

In order for a defendant to invoke his federal constitutional right to represent himself, he must assert the right " 'within a reasonable time prior

to the commencement of trial.' " (*People* v. *Burton* (1989) 48 Cal.3d 843, 852 [258 Cal.Rptr. 184, 771 P.2d 1270], quoting *People* v. *Windham* (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187].) A *Faretta* motion made after this period is addressed to the sound discretion of the trial court. (*Ibid.*) In assessing the motion, the trial court should consider the " 'quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion.' " (*Burton, supra,* at p. 853, quoting *Windham, supra,* at p. 128.)

Here, appellant's motion was untimely since it was made after the jury was sworn[3] and just as opening statements were to begin. (See *People* v. *Frierson* (1991) 53 Cal.3d 730, 742 [280 Cal.Rptr. 440, 808 P.2d 1197] [*Faretta* motion on the eve of trial untimely]; *People* v. *Burton, supra,* 48 Cal.3d at p. 853 [motion made after the case was sent to the trial department for trial and both counsel answered ready untimely]; *People* v. *Morgan* (1980) 101 Cal.App.3d 523, 531 [161 Cal.Rptr. 664] [motion made just before jury selection]; *People* v. *Hall* (1978) 87 Cal.App.3d 125, 132-133 [150 Cal.Rptr. 628] [motion made on date trial was set to begin].) The motion was therefore directed to the sound discretion of the trial court.

The record demonstrates that the trial court abused its discretion in denying the motion. In making his *Faretta* motion, appellant did not request a continuance and was prepared to proceed with the trial. There is no indication that appellant sought to delay the proceedings or that his self-representation would obstruct the orderly administration of justice. Further, appellant had not demonstrated a proclivity to substitute counsel but argued that he had a "profound" difference of opinion with defense counsel regarding the manner in which the case should proceed. Appellant was ready to proceed with trial of the case, cognizant that "so much is at stake." In *People* v. *Nicholson* (1994) 24 Cal.App.4th 584, 593 [29 Cal.Rptr.2d 485], the court, on similar facts, held that ". . . where self-representation is requested for a legitimate reason, where there is no request for a continuance and where there is no reason to believe there would be any delay or disruption, the trial court's denial of a *Faretta* motion is an abuse of discretion." In *Nicholson,* the court determined that the trial court erroneously denied the defendants' *Faretta* motions which were made on the date set for trial since the defendants did not request a continuance, they had no prior proclivity to substitute

---

[3]For double jeopardy purposes, trial commences when the jury is sworn. (*People* v. *Gephart* (1979) 93 Cal.App.3d 989, 998 [156 Cal.Rptr. 489].)

counsel and they were well aware that they were facing life sentences.[4]
■ As in *Nicholson,* appellant was entitled to represent himself. "[T]he state may not constitutionally prevent a defendant from 'controlling his own fate by forcing on him counsel who may present a case which is not consistent with the actual wishes of the defendant.' " (*Id.* at p. 595, quoting *People* v. *Windham, supra,* 19 Cal.3d at p. 130.) ■ The trial court's error in denying appellant's *Faretta* motion, however, does not require reversal.

■ The erroneous denial of an untimely *Faretta* motion is reviewed under the harmless error test of *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. (*People* v. *Rivers* (1993) 20 Cal.App.4th 1040, 1050-1051 [25 Cal.Rptr.2d 602].) ■ Here, through defense counsel's representation, appellant was convicted of the lesser included offense of attempted voluntary manslaughter and was acquitted of two counts of assault with a firearm upon a peace officer. In light of the strong evidence of appellant's guilt which included his admissions in a taped statement to police shortly after the incident and a videotape of the incident, it is not reasonably probable that appellant would have obtained a more favorable verdict had he represented himself at trial.

The judgment is affirmed.

Poché, Acting P. J., and Reardon, J., concurred.

A petition for a rehearing was denied September 11, 1995, and appellant's petition for review by the Supreme Court was denied November 21, 1995.

---

[4]Here, also, appellant, in his initial request to represent himself, indicated that he was aware of the consequences of representing himself: ". . . considering the odds of success even with counsel, I consider that basically I have got nothing to lose, and I consider any amount of time too much time, and the most amount is a great many years, I understand. But I simply consider I have got too much to lose without me being adequately able to express what happened out there."