Filed 5/23/13  P. v. Miller CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ERIC MILLER,<br><br>　　　Defendant and Appellant. | B238570<br><br>(Los Angeles County<br>Super. Ct. No. NA089963) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Arthur Jean, Jr., Judge.  Affirmed.

California Appellate Project, Jonathan B. Steiner, and Ann Krausz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**INTRODUCTION**

A jury convicted defendant Eric Miller of first degree burglary in violation of Penal Code section 459.[1]  The jury also found that the offense was committed while another person was present in the residence as described in section 667.5, subdivision (c). The trial court found that defendant had suffered three prior strike convictions pursuant to sections 1170.12, subdivisions (a) through (d), and 667, subdivisions (b) through (i), but struck two of the prior strike convictions.  The court also found true the allegation that defendant had suffered two prior convictions pursuant to section 667, subdivision (a)(1). Defendant was sentenced to 18 years in state prison, consisting of the midterm of four years doubled pursuant to the "Three Strikes" law, plus 10 years for the two priors pursuant to section 667, subdivision (a)(1).

On appeal, defendant contends the trial court erred by summarily denying his request to represent himself.  He argues the trial court was required by the Sixth Amendment to the United States Constitution and *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) to grant his request, made 10 days before voir dire began.  Alternatively, he contends the trial court abused its discretion by failing to weigh all relevant factors before deciding whether to grant his request for self-representation.  Because we conclude the *Faretta* request was untimely and the trial court did not abuse its discretion in denying the request, we affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Manuel Guzman, Gabriel Cordero, and Richard Velmar resided at 428 Bonito Avenue in Long Beach.  On September 1, 2011, Guzman went to sleep around midnight and awoke at 7:00 a.m. the next morning.  Cordero went to sleep around 5:00 a.m.  When he awoke two hours later, he discovered his wallet was missing.  Guzman and Cordero noticed other items missing, including a DVD player and remote, a toolbox, a video

---

[1]    All further statutory references are to the Penal Code.

camera and charger cable, a backpack with a Swiss Army logo, and bottles of alcohol. Cordero's helmet, gloves, printer screen, and iPad charger were also missing. Guzman notified the police.

Guzman and Cordero did not know defendant. They did not give him permission to enter their house or take their belongings.

Shortly after 9:00 a.m., Long Beach Police Officer Jessica Delosh responded to Guzman's call regarding a burglary at his residence. Officer Delosh walked through the home and noted where the missing items had been before they were taken.

About one hour after leaving the residence, Officer Delosh and Long Beach Police Sergeant Robert Knight responded to a traffic collision a few blocks away involving a car and an intoxicated bicyclist, later identified as defendant. Officer Delosh arrested defendant for public drunkenness and searched his bicycle and two backpacks. One of the backpacks had a Swiss Army logo and contained bottles of alcohol. The other backpack contained a DVD player, a power cord, and a remote. Defendant had two wallets in his rear pants pocket, one of which contained defendant's identification. The other wallet contained Gabriel Cordero's identification and credit cards in Cordero's name.

Officer Delosh realized that many of defendant's possessions had been described to her by Guzman as items taken from his residence. When Officer Delosh asked defendant about the backpacks, he said they belonged to him. Officer Delosh took the items to Guzman, who identified the items as belonging to him and Cordero. Guzman said there were still some items missing.

Long Beach Police Detective Jennifer Valenzuela interviewed defendant a few days after his arrest. Defendant waived his *Miranda*[2] rights. He told her he found the items in a trash can near Sixth and Cerritos, denying he entered a residence to obtain them. Detective Valenzuela felt she was unable to establish a rapport with defendant and asked Detective Jose Yarruhs to question him.

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

In questioning defendant, Detective Yarruhs employed the ruse that the Governor's niece dated someone who lived at the residence where the burglary occurred. Detective Yarruhs asked why defendant chose that particular apartment to burglarize and defendant said, "[B]ecause the back door was open." Defendant said the back door of the apartment was in an alley.

Detective Yarruhs did not know where the burglarized residence was located, whether it was an apartment or a house, or whether it had a back door. Defendant said he had met a transient who had previously burglarized the residence and the two of them went to the residence to take more. Defendant said he took bottles of liquor and the transient took a wallet and DVD player. Defendant agreed to take Detective Yarruhs to the location. Defendant described the residence in detail, including the layout of the house and where the liquor was kept. He directed Detective Yarruhs and another officer to drive to the area of Fourth and Bonito Avenue, and told them to stop in an alley near a door. The residence was 428 Bonito. When Detective Yarruhs went inside, he saw that defendant's description of it had been accurate.

When they returned to the jail, Detective Yarruhs asked defendant if he wanted to write a letter of apology. Defendant wrote a letter stating in part, "I, Eric Miller, apologize for any problem I may have caused for doing the stupidest thing I ever done. I don't know whose house it was. I seen liquor and went crazy, period."

Defendant was arraigned on October 18, 2011. Deputy Public Defender Jeanette Lee was his appointed counsel at that time and remained his counsel for the entirety of his trial. Defendant had a pretrial conference with his counsel on November 2, 2011.

On November 28, 2011, defendant brought a *Marsden*[3] motion to replace his appointed counsel. He told the court he wanted his attorney to ask that his statement be excluded under the Fifth Amendment. The court replied that that was a trial matter and would be dealt with at the time of trial, and that his counsel would make whatever motion she thought was appropriate. Defendant then said, "I am going to have a deal I would

---

[3]     *People v. Marsden* (1970) 2 Cal.3d 118.

4

think the deal would be coming from both of us and, you know, be something of that we can both agree on or something." The court replied that defendant could accept the prosecution's offer of 14 years or not. "If you don't want it, have a trial. That's where we are. Miss Lee is a fine lawyer. She is not a magician. She can't pull rabbits out of hats. She can't make something happen." The court ruled that it saw no reason to appoint a different lawyer.

On December 6, 2011, defendant's counsel informed the court that defendant had indicated he wished to represent himself. The court said, "We are set for trial on the 15th, Mr. Miller. Are you going to be ready?" Defendant said no, and the court responded, "Then the answer is no. That's a week away. We are going to trial on the 15th. The D.A. is going to be ready. Miss Lee is going to be ready. This court is going to be ready. And, in my view, you are just doing this for delay. And the answer is no." Defendant replied, "Okay." The court continued, "If you are going to be ready on the 15th, you are welcome. You are welcome to go forward and be pro[.] per. You are welcome to." Defendant discussed the matter with his counsel, who then informed the court, "the defendant is stating that he would like to go to trial."

On December 15, 2011, the day scheduled for trial to begin, defendant brought a second *Marsden* motion. Defendant said he was on medication for "[psych] conditions. And I explained that to my lawyer but she has failed to explore that I was duped into signing a letter of admittance while I was heavy dosed on meds. Secondly, she has failed with due diligence to counteract the prosecution of this case by filing any pretrial motions or investigating any affirmative defense in regards to this case. This violation of my Sixth and 14th Amendment rights to adequate counsel who fails to investigate. Plus, she has not prepared to battle a D.A. who is well-seasoned in prosecution which she has only two years experience." The court asked defense counsel, "Psych meds, what's that all about, if anything?" Counsel said, "The psych medication, Your Honor, he has not informed me that he was on psych medications at the time. The discussions we had was that he was alcohol induced. I was not informed he was on any type of medication at the

5

time of the incident. Certainly I would have investigated that issue thoroughly. I would have asked for a continuance and investigated that issue."

The court inquired about counsel's failure to investigate other defenses. Counsel explained she had tried to investigate the issue of intoxication, but that would require defendant's having to testify regarding his "level of when he began to drink," so that would be presented during trial. Defendant was unable to identify his supposed companion during the burglary, and there were no other witnesses. Counsel indicated she had tried to investigate what she was able to in this case.

The court said to defendant, "Miss Lee is a seasoned lawyer. She is very capable of defending you. She is not a magician. She can't pull rabbits out of a hat. She can't make things appear that aren't there. I see no reason to find you another lawyer. I see no reason to remove her from the case."

Defense counsel then stated, "[A]t this point Mr. Miller indicated to me that he wants to go pro[.] per[.] under his rights under *Faretta*. He is uncooperative with me, Your Honor, in this instance that I cannot discuss potential defenses with him about what we will do, whether he will be testifying in trial, whether he will be wanting to bifurcate his case. He will not discuss the case with me. He believes that I . . . have been ineffective. At this point I believe as we are beginning the trial, that I will be ineffective if he is uncooperative with me. I am asking if the court will allow him to go pro[.] per[.] under his right and to give him the continuance so that he will have his fair trial. Otherwise . . . I believe that . . . he is not going to have a fair trial. . . . [H]e will not cooperate with me."

The trial court responded that if defendant wanted a fair trial he was obligated to be cooperative in preparing and presenting his defense. Instead, he was deciding not to cooperate. The court reiterated that it would not stop defendant from representing himself but it would not grant a continuance. Defendant said, "I don't even want to be in this trial. So everybody is going to pick everything for me. You are all going to do what you are all going to do. That's what I am trying to figure out." The trial court ruled it was not going to replace defense counsel and concluded the *Marsden* hearing, adding, "If

6

you tell me you don't want to be here, we can have a trial without you. I don't want you not to be here. I think you ought to be here so you can help Miss Lee. If you don't want to be here—" Defendant said, "I don't want to be here." Jury trial commenced the following day, on December 16, 2011. Defendant did not attend the trial.

After judgment was entered, this timely appeal ensued.

## DISCUSSION

Defendant contends the trial court erred when it denied his request to represent himself at trial. We disagree.

In *Faretta*, *supra*, 422 U.S. 806, 836, the United States Supreme Court held that a defendant in a state criminal trial has a federal constitutional right to represent himself or herself without counsel if he or she voluntarily and intelligently elects to do so. The California Supreme Court recently discussed the right to self-representation under *Faretta*: "A trial court must grant a defendant's request for self-representation if the defendant unequivocally asserts that right within a reasonable time prior to the commencement of trial, and makes his request voluntarily, knowingly, and intelligently. [Citations.] As the high court has stated, however, '*Faretta* itself and later cases have made clear that the right of self-representation is not absolute.' [Citations.]" (*People v. Lynch* (2010) 50 Cal.4th 693, 721 (*Lynch*), overruled on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 636-638.) A *Faretta* motion thus may be denied if the defendant is not competent to represent himself or herself, is disruptive or engages in misconduct that seriously threatens the integrity of the trial, or if the motion is made for the purpose of delay. (*Lynch*, at pp. 721-722.) Likewise, our Supreme Court has long held that a self-representation motion may be denied if it is untimely. (*Id.* at p. 722.)

"Under [*People v. Windham* (1977) 19 Cal.3d 121, 127-128 (*Windham*),] a motion is timely if made 'a reasonable time prior to the commencement of trial.' [Citation.]" (*Lynch*, *supra*, 50 Cal.4th at p. 722.) Neither the United States Supreme Court nor our Supreme Court has articulated a bright line rule with respect to the timeliness of a *Faretta*

7

motion. In general, courts have held that *Faretta* motions made on the eve of trial are untimely. (*Id*. at p. 723, citing cases.) Conversely, such motions made months before trial have been considered timely. (*Ibid.*) "[O]utside these two extreme time periods, pertinent considerations may extend beyond a mere counting of the days between the motion and the scheduled trial date." (*Ibid.*)

Specifically, "a trial court may consider the totality of the circumstances in determining whether a defendant's pretrial motion for self-representation is timely. Thus, a trial court properly considers not only the time between the motion and the scheduled trial date, but also such factors as whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation." (*Lynch*, *supra*, 50 Cal.4th at p. 726.) "An analysis based on these considerations is in accord with the purpose of the timeliness requirement, which is 'to prevent the defendant from misusing the motion to unjustifiably delay trial or obstruct the orderly administration of justice.' [Citation.]" (*Id.* at p. 724.)

The trial court properly rejected defendant's request to represent himself for two reasons: (1) the request was equivocal in that the court had reason to believe it was made solely for purposes of delay, and (2) it was untimely.

The court voiced suspicion that defendant's *Faretta* motion was made for purposes of delay. The motion was made about one week after defendant's first *Marsden* motion was denied. It was reasonable for the court to conclude, therefore, that defendant's *Faretta* motion was made in response to the denial of his *Marsden* motion rather than because of a genuine desire to serve as his own attorney. This was a proper reason to deny the motion because the request for self-representation was "not unequivocal." (*People v. Scott* (2001) 91 Cal.App.4th 1197, 1205-1206.) Defendant was trying to avoid or at least delay the inevitable. He saw that the evidence of his guilt was considerable and he was anxious to forestall trial. He said, "I don't even want to be in this trial. So everybody is going to pick everything for me. You are all going to do what

8

you are all going to do. That's what I am trying to figure out." His *Faretta* motion was borne not so much from a desire to represent himself but from a desire to exert some control over a situation that he understandably feared was reaching its predictable conclusion. He had no apparent plan. He did not suggest how long a continuance he wanted or what he planned to do differently from his trial counsel. He had rejected the plea offer, there appeared to be no valid grounds to keep his written admission of guilt out of evidence, he offered no further argument that he was taking medication that affected his judgment when he wrote the statement, and he had no proposal to locate additional witnesses. He was uncooperative with his lawyer not because he could articulate anything she was doing wrong but because he could see that the outcome of the trial was likely to be unfavorable.

The request was also untimely because everyone involved in the trial was ready to proceed on December 15, nine days after defendant's first request. Defendant rejected the court's offer to represent himself so long as he proceeded on the scheduled trial date. It is evident that defendant was attempting to "'misus[e] the motion to unjustifiably delay trial.'" (*Lynch*, *supra*, 50 Cal.4th at p. 724.) Under the totality of the circumstances, the trial court did not abuse its discretion by denying defendant's *Faretta* motion.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

SUZUKAWA, J.

We concur:

WILLHITE, Acting P. J.            MANELLA, J.

9