Filed 7/31/23  P. v. Burris CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KIGIMANI BURRIS,<br><br>    Defendant and Appellant. | D080549<br><br><br>(Super. Ct. No. SCD288335) |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth K. So, Judge.  Affirmed.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

Kigimani Burris appeals from a final judgment after a jury convicted him of 16 counts of robbery and found true all corresponding firearm allegations.  The trial court, after finding true the prior serious felony

allegations and the prior strike allegations as well as five of six aggravating factors, sentenced Burris to a prison term of 400 years to life, plus 275 years. On appeal, Burris contends that the trial court erred in denying his request to represent himself, which he raised on the day trial was set to begin. Burris also contends that the trial court was unaware of its discretion to strike the enhancements imposed under Penal Code section 12022.53, subdivision (b)[1] and instead impose uncharged section 12022.5, subdivision (a) enhancements, and that we must therefore remand the case to allow the court to decide whether to exercise its discretion in resentencing Burris.

We find no error in the trial court's denial of Burris's untimely self-representation request. We further conclude that, even assuming the trial court had the discretion to strike the section 12022.53, subdivision (b) enhancements and instead impose uncharged section 12022.5, subdivision (a) enhancements—an issue currently pending before the Supreme Court that we need not and do not decide here—the record clearly indicates that the trial court would not have exercised that discretion. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Underlying Crimes*

Between October 20, 2020, and November 19, 2020, Burris and his co-defendant, W.W., committed 18 robberies at various motels, gas stations, and convenience stores across Orange County, San Diego County, San Bernardino County, and Riverside County. Burris and W.W. were armed during these robberies and confronted several victims at gunpoint.

Law enforcement officers investigating the crimes began tracking a white Dodge Challenger that had been used in the robberies and eventually

---

[1]     Undesignated statutory references are to the Penal Code.

2

determined it was a car Burris had rented. The officers located the rental car at an address belonging to Burris, continued surveilling the vehicle, and ultimately followed it to the parking lot of a convenience store in Laguna Hills on November 19, 2020. At least one undercover officer witnessed Burris and W.W. rob the convenience store clerk at gunpoint and drive away in the Dodge Challenger. After a high-speed chase and several attempts to flee from law enforcement, Burris and W.W. were arrested and ultimately charged.

B. *Trial Proceedings*

Burris was represented by the public defender when he was arraigned on the amended complaint on December 14, 2020. The complaint charged him and co-defendant W.W. with 21 counts of robbery, attempted robbery, and conspiracy to commit robbery, as well as several allegations of personally and intentionally using a firearm. Burris pleaded not guilty to all charges. He retained private counsel in January 2021 to represent him at his preliminary hearing in June 2021. After the preliminary hearing, the court held Burris to answer on all charges, and the public defender was reappointed on June 21, 2021. Trial was initially set for August 10, 2021 but was continued first to January 19, 2022 and then to April 25, 2022.

On April 25, 2022, the trial court called Burris's case for trial. Burris, his public defender, and a deputy district attorney appeared in court, and the deputy district attorney filed a second amended information. The second amended information charged Burris with one count of conspiracy to commit robbery (§ 182, subd. (a)(1)) (count 1); 18 counts of robbery (§ 211) (counts 2–5, 8–10, 12, 13, 16–19, 21–23, 25, and 26); six counts of possession of a firearm by a felon (§ 29800, subd. (a)(1)) (counts 7, 11, 14, 20, 24, and 27); and two counts of attempted robbery (§ 664/§ 211) (counts 6 and 15). The

information alleged that with respect to counts 6, 10, 12, 13, 18, 19, 21–23, 25, and 26, Burris personally and intentionally used a firearm (§ 12022.53, subd. (b)), and that with respect to counts 2, 3, 4, 5, 8, 9, 16, and 17, Burris was a principal in the commission of an offense in which another principal was armed with a firearm (§12022, subd. (a)(1)).

The information alleged six aggravating factors within the meaning of California Rules of Court, rule 4.421: Burris was armed with or used a handgun (rule 4.421, subd. (a)(2)); Burris induced others to participate or occupied a position of leadership (rule 4.421, subd. (a)(4)); Burris had served four prior prison terms (rule 4.421, subd. (b)(3)); the offense was carried out with planning, sophistication, and professionalism (rule 4.421, subd. (a)(8)); the offense involved taking property of great monetary value (rule 4.421, subd. (a)(9)); and the offenses were numerous and of increasing seriousness (rule 4.421, subd. (b)(2)). The information further alleged that Burris had suffered two prior serious felony convictions and three prior strike convictions.

Immediately before Burris's arraignment on the second amended information and the impanelment of the jury, Burris informed the trial court that he "would like to go pro per." The court asked whether Burris was ready to try the case, and he said he was not, estimating that it would be "another two months" or "maybe three months" before he would be ready for trial.

The trial court judge first went through the procedural history of the case and confirmed that Burris's public defender was ready for trial. He then denied Burris's request for self-representation as untimely. The court noted that the case was "pretty complicated," with 27 counts and many witnesses, and then stated it was "making a finding that the request is untimely and it's more delay." The court reiterated: "I'm finding that's untimely because it's

on the day that this case was sent out for trial, and you indicated you would not be ready for another several months."

Burris argued that he sought to represent himself to obtain evidence showing the judge presiding at his preliminary examination slept during the hearing. He believed that the attorneys knew the judge was sleeping, but they would not admit it or "rock the boat," and he wanted to subpoena courtroom video he believed would prove this. The trial court repeated its finding that Burris's request was untimely based on the complexity of the case, noting that there might be as many as 73 witnesses at trial, and the fact that Burris would not be ready for trial for a couple of months.

Burris further argued that he was missing discovery, including videos he alleged would show 10 law enforcement officers assaulting him during his arrest. He wanted the jurors to see those videos but was told "they can't get them in court," which made him feel like he was "bring screwed all the way around." The trial court again stated that Burris's motion to represent himself was untimely and that the parties would proceed to motions and jury selection.

The next day, the trial court revisited Burris's request to represent himself to confirm that the reasons Burris was seeking to represent himself were on the record. Burris stated: "Well, I just feel that if I went pro per, I would be able to get all of my discoveries, everything that I need that is usually not turned over to the public defenders[.]" Burris clarified that he did not have a problem with the quality of his current attorney's representation.

The public defender representing Burris informed the court that she believed Burris was specifically referring to body-worn camera footage from his arrest, and that while she had requested the footage, her understanding was that the officers who arrested Burris were not wearing body-worn

5

cameras. The deputy district attorney confirmed that the police officers who arrested Burris were either not wearing cameras or were not recording at the time of his arrest.

Burris disagreed, stating that there were "well over 20, 30 officers" present the day he was arrested and that it was only the two officers interviewed by the district attorney's office who allegedly did not have their body-worn cameras activated. The court stated that any evidence relating to Burris's arrest had no bearing on his guilt or innocence as to the robbery that occurred just before his arrest. Burris responded that one of the officers who arrested him committed perjury and that he could use the videos to prove that. The trial court reiterated that the videos were not relevant to the question of whether Burris was guilty of the robbery.

Responding to the trial court's inquiry as to the investigation into the judge who allegedly fell asleep while presiding over Burris's preliminary hearing, the public defender confirmed that she interviewed Burris's previous private counsel who had represented him at the hearing, and he stated in a declaration that although the judge sometimes had his eyes closed, the attorney had no reason to believe he was not paying attention to the case. The public defender further explained that she read the preliminary hearing transcript and believed the judge made the proper observations, even dismissing one of the charges.

The trial court ultimately reiterated its finding that Burris's request to represent himself was untimely, the case was complex, everyone was ready to proceed to trial, and there would be too long of a delay if the request were granted. The court also made "a finding that the quality of the representation of counsel has been more than adequate" and explained that the reasons for the self-representation request did not go to the heart of

6

whether Burris was guilty or not guilty of the charges filed against him.  The parties then proceeded to voir dire.

The next day, Burris pleaded guilty to the six counts of possession of a firearm by a felon (counts 7, 11, 14, 20, 24, and 27) and admitted the two prior serious felony convictions.

A bifurcated trial was then held on the robbery counts and remaining allegations.  The jury found Burris not guilty of count 15, attempted robbery, and the trial court dismissed counts 2, 3, and 4 because the jury was unable to reach a verdict.  The jury convicted Burris on all of the remaining counts and found true all of the firearm allegations.  The trial court found true the prior serious felony allegations and the prior strike allegations.  The court also found true five of the six aggravating factors.

C. *Sentencing*

The trial court sentenced Burris to a prison term of 400 years to life, plus 275 years, consisting of the following: 16 consecutive terms of 25 years to life for robbery (§ 211), charged in counts 5–10, 12, 13, 16–19, 21–23, 25, and 26; 11 consecutive 10-year terms for the personal use enhancements on counts 6, 10, 12, 13, 18, 19, 21–23, 25, and 26 (§ 12022.53, subd. (b)); five consecutive one-year terms for the vicariously armed enhancements on counts 5, 8, 9, 16, and 17 (§ 12022, subd. (a)); and 16 consecutive 10-year terms for the two serious prior felony enhancements on counts 5, 6, 8–10, 12, 13, 16–19, 21–23, 25, and 26 (§ 667, subd. (a)).  The court stayed the sentences on counts 1, 7, 11, 14, 20, 24, and 27 pursuant to section 654.

Burris timely appealed.

7

DISCUSSION

I

Burris contends that the trial court erred by denying his request under *Faretta v. California* (1975) 422 U.S. 806 to represent himself as untimely and that, even if his request was untimely, the court abused its discretion in denying it. His contention lacks merit.

A. *Burris's Faretta Request Was Untimely*

Burris first urges us to apply the Ninth Circuit's "impaneled jury" rule to find that his request for self-representation was timely. Under California law, a *Faretta* motion is timely only if made "a reasonable time prior to the commencement of trial." (*People v. Windham* (1977) 19 Cal.3d 121, 128 (*Windham*).) And "once a defendant has chosen to proceed to trial represented by counsel," his motion for self-representation is "addressed to the sound discretion of the court." (*Ibid*.) Under the Ninth Circuit rule, a *Faretta* motion is "timely *as a matter of law* if made before the jury is impaneled, so that the motion must be granted unless it is shown that the motion is made for the purpose of delay." (*People v. Burton* (1989) 48 Cal.3d 843, 853 (*Burton*), italics added; see also *Avila v. Roe* (9th Cir. 2002) 298 F.3d 750, 753.)

The problem with Burris's argument that we should apply the Ninth Circuit rule is that it has been repeatedly rejected by the California Supreme Court. In *Burton*, the Court found that, to the extent that there is even a difference between the impaneled jury rule and California law, the Ninth Circuit rule is "too rigid in circumscribing the discretion of the trial court," and it concluded that the Court should adhere to the California rule. (*Burton, supra,* 48 Cal.3d at p. 854.) In *Windham*, the Court explained that a "defendant should not be permitted to wait until the day preceding trial

8

before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request. In such a case the motion for self-representation is addressed to the sound discretion of the trial court . . . ." (*Windham*, *supra*, 19 Cal.3d at p. 128, fn. 5.)

More recently, the Supreme Court reaffirmed the *Windham* standard, explaining that the Court has "held on numerous occasions that *Faretta* motions made on the eve of trial are untimely," and questioning the rationale for the Ninth Circuit cases "suggesting that 'requests made "weeks before trial" ' are invariably timely." (*People v. Lynch* (2010) 50 Cal.4th 693, 722, 724 (*Lynch*).) And in *People v. Johnson* (2019) 8 Cal.5th 475 (*Johnson*), where the defendant also argued in favor of the Ninth Circuit rule "that a *Faretta* motion is timely as a matter of law if it is made before trial," the Supreme Court again rejected it: "Although we recognize that some federal appellate decisions have adopted a different approach, we see no compelling reason to reconsider the standard set forth in *Lynch* at this time." (*Johnson*, at p. 502.)

We must follow Supreme Court precedent, and we therefore decline Burris's invitation to apply the Ninth Circuit rule to find his request for self-representation timely. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *People v. Sandee* (2017) 15 Cal.App.5th 294, 304 ["We are not bound by Ninth Circuit precedent [citation], and we do not find [defendant's] analysis to be persuasive because it does not follow the approach approved by the California Supreme Court . . . ."].)

Burris next argues that even if we apply California law, his *Faretta* request on the day of trial was not untimely. We are not persuaded. Although "timeliness for purposes of *Faretta* is based not on a fixed and

9

arbitrary point in time," the Supreme Court and other California courts have consistently concluded that "*Faretta* motions made on the eve of trial are untimely." (*Lynch*, *supra*, 50 Cal.4th at pp. 722, 724; see also *Burton*, *supra*, 48 Cal.3d at p. 853 [*Faretta* request untimely where defendant made it after the case had been called for trial, both counsel had answered ready, the case had been transferred to a trial department; voir dire began the next day and the jury was impaneled three court days later]; *People v. Valdez* (2004) 32 Cal.4th 73, 102 [*Faretta* request untimely when made "moments before jury selection"]; *People v. Horton* (1995) 11 Cal.4th 1068, 1110–1111 [*Faretta* request untimely when made on the date scheduled for trial]; *People v. Stringer* (2019) 41 Cal.App.5th 974, 991 [*Faretta* request untimely when made the same day trial was scheduled to begin].).

Burris made his request for self-representation on the same day trial was set to begin. The trial judge announced that Burris's case had been assigned to him for trial and that he expected to select a jury the next day. It was then, for the first time, that Burris requested to represent himself, stating that he would not be ready for trial for another two to three months. His request was therefore untimely.

Even if the request was not untimely per se, as Burris contends, the trial court here properly considered the relevant factors in concluding the request was untimely. (See *Lynch*, *supra*, 50 Cal.4th at p. 726 ["[A] trial court properly considers not only the time between the motion and the scheduled trial date, but also such factors as whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation."].) As the trial court explained, Burris's case

10

was complex, with 27 counts charged and a witness list containing 73 witnesses.[2] Burris made his request on the same day trial was scheduled to begin, and while his public defender and the prosecutor were both ready for trial, Burris was not. He estimated he would need an additional two to three months to prepare. Burris provided no explanation for why he had not previously requested to represent himself. Under these circumstances, the trial court properly found Burris's self-representation request untimely.

B. *The Trial Court Did Not Abuse Its Discretion in Denying Burris's Faretta Request*

When a court denies an untimely request for self-representation, we must also consider whether its denial was an abuse of discretion. (*People v. Buenrostro* (2018) 6 Cal.5th 367, 426 (*Buenrostro*).) Burris contends that even if we find his *Faretta* request untimely, we must still reverse the judgment because the trial court abused its discretion in denying the request. According to Burris, the trial court's stated reasons for the denial were either improper or unsupported by the record. We disagree and conclude that no abuse of discretion has been shown.

The Supreme Court has held that a trial court exercising its discretion to grant or deny an untimely *Faretta* request "should consider, among other factors, 'the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request,

---

[2] Burris asserts that permitting courts to deny a *Faretta* request based on the number of counts and witnesses would preclude self-representation for any defendant facing trial on multiple counts with many witnesses. Not so. First, the Supreme Court has held that a trial court properly considers such facts when determining whether a *Faretta* request is *untimely*. (*Lynch*, *supra*, 50 Cal.4th at p. 726.) That is precisely what the trial court did here. Burris could have made his request sooner but chose not to. Second, the trial court considered several relevant factors and did not base its decision solely on the number of counts and witnesses.

11

the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion.' " (*Buenrostro*, *supra*, 6 Cal.5th at p. 426, quoting *Windham*, *supra*, 19 Cal.3d at p. 128.) Here, in two separate discussions with Burris, the trial court expressly considered the quality of defense counsel's representation, Burris's reasons for his self-representation request, the length and stage of proceedings, and the disruption or delay that could reasonably be expected to result if the request were granted.

In assessing the self-representation request, the trial court first confirmed that defense counsel was ready for trial. The court also asked Burris if his request was related to the quality of his attorney's representation. Burris responded, "No. No, not at all." The court ultimately made a finding that the quality of the representation was "more than adequate."

The trial court also considered the reasons for the request and found them to be inadequate. Burris expressed his desire to obtain videos showing that (1) the judge presiding at his preliminary examination slept during the hearing and (2) several law enforcement officers assaulted him during his arrest. Burris believed that if he were representing himself, he "would be able to get all of [the] discover[y]" he needed "that is usually not turned over to the public defenders[.]"

Statements by Burris's public defender and the prosecutor in response to the trial court's questioning refuted these claims. The public defender explained that she had interviewed Burris's previous private counsel, who had no reason to believe the preliminary hearing judge was not paying attention. Moreover, she believed the transcript reflected the judge's active participation in the hearing, as he had made "the proper objections and

12

observations" and "even dismissed one of the allegations, one of the charges, on the complaint." Both Burris's public defender and the prosecutor stated that it was their understanding that there was no body-worn footage of Burris's arrest, as the police officers who arrested him were either not wearing cameras or were not recording at the time of his arrest. The trial court first confirmed that Burris was not charged with any arrest-related conduct and then concluded that any evidence regarding what happened during the arrest had no bearing on his guilt or innocence as to the charged offenses.

Regarding the length and stage of the proceedings, the trial court noted several times that Burris failed to make his *Faretta* request until the day of trial. At the time Burris made his request, it had been 16 months since he first pleaded not guilty to the charges filed against him and 10 months since he was arraigned on the information. Both trial counsel were prepared to go to trial, whereas Burris conceded that he was not, estimating that he would need a trial continuance of at least two to three months.

The trial court further found that granting Burris's *Faretta* request would result in too much disruption and delay. Given Burris's accompanying request to continue trial for another two to three months, this conclusion was warranted. And contrary to Burris's suggestion, the trial court was not required to expressly find that he had made the request *for the purpose* of delay—rather, it is sufficient that the court found such delay would reasonably result. (See *Buenorostro*, *supra*, 6 Cal.5th at p. 426 [factors to be considered by the court in assessing a *Faretta* request include "the disruption or delay *which might reasonably be expected* to follow the granting of such a motion," italics added].)

13

Finally, though the trial court did not expressly reference Burris's prior proclivity to substitute counsel, and it appears he exhibited none, the court's findings as to the other factors are more than sufficient to support its denial of the request. (See *People v. Wright* (2021) 12 Cal.5th 419, 439 [affirming denial of *Faretta* motion despite that defendant exhibited no prior proclivity to substitute counsel].) We therefore conclude that the trial court did not abuse its discretion in denying Burris's *Faretta* motion.

II

Burris also contends that we must remand his case to permit the trial court to consider whether to exercise its discretion to strike the section 12022.53, subdivision (b) enhancements and instead impose uncharged section 12022.5, subdivision (a) enhancements. As Burris notes, the issue of whether trial courts have the discretion to strike section 12022.53 enhancements and instead impose lesser uncharged enhancements under section 12022.5 is currently pending before the Supreme Court. (See *People v. McDavid* (2022) 77 Cal.App.5th 763, review granted September 28, 2022, S275940.)

The People argue that section 12022.53, subdivision (j), prohibits the imposition of punishment for a lesser enhancement outside of section 12022.53, and the trial court therefore lacked discretion to impose a lesser firearm enhancement from another statute. The People further contend that even if the trial court did have such discretion, remand is unnecessary because the court's statements at sentencing show that it would not have opted to impose a lesser enhancement. Because we agree with the People's second argument, we need not reach the first.

Remand for resentencing is not required where "the record shows that the trial court clearly indicated when it originally sentenced the defendant

14

that it would not in any event have stricken" an enhancement. (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.) Here, the trial court repeatedly acknowledged its discretion to strike various enhancements and allegations, but declined to exercise any discretion in Burris's favor: "And I understand that I have discretion. I understand I have discretion to strike strikes, to strike priors, to strike the nickel prior, to strike the gun allegation. I understand I have that discretion, and unfortunately, in this case, I don't see any remorse." In addition to lack of remorse, the court cited a number of other factors that supported its decision not to strike the priors or allegations, including the fact that Burris was armed during the robberies, the vulnerability of the victims, the emotional damage he inflicted on the victims, the level of his participation, and his criminal history. The court then repeated: "[B]ased on the fact I understand I have discretion, I understand I can strike these things, I can strike these allegations, I can strike the strike, I can strike the nickel prior, I can strike the gun allegations, but I'm exercising my discretion and declining to do so." The court further acknowledged its discretion to impose concurrent rather than consecutive terms, and again declined to impose concurrent terms, because the victims "were each individually traumatized and terrorized."

The trial court's repeated recognition of its broad discretion in sentencing Burris, its decision not to exercise any discretion in Burris's favor, and its stated reasons for declining to strike any prior or allegation all demonstrate that it intended to impose the most severe punishment. The record reflects that the court knew it had multiple ways to exercise sentencing discretion in favor of a more lenient sentence, but still chose to impose the greatest possible sentence. We therefore conclude that, even assuming the trial court had discretion to impose section 12022.5, subdivision

15

(a) enhancements and also was not aware of its discretion at the time of Burris's sentencing, the record clearly indicates the court would have declined to exercise that discretion.

DISPOSITION

The judgment is affirmed.

BUCHANAN, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.