Filed 9/4/15  P. v. Carlson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C075508 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 13F01027, 13F03333) |
| v. | |
| ERIC PATRICK CARLSON, | |
| Defendant and Appellant. | |

Following his pleas of no contest to possessing a sharp instrument in a penal institution (Pen. Code, 4502, subd. (a))[1] and burglary (§ 459), and admission of a strike conviction (§§ 667, subds. (b)-(i), 1170.12), defendant Eric Patrick Carlson appeals his convictions contending the trial court abused its discretion in denying his second *Faretta*[2]

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

[2] *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562] (*Faretta*).

1

motion. He argues the court erred in denying his motion without making the inquiry required by *Faretta*, or alternatively, the trial court abused its discretion in denying his motion based on findings not supported by the record. We conclude that the trial court properly found the motion to have been made for the purpose of delay and would have also been justified in finding the motion was untimely. Thus, the trial court properly exercised its discretion.

We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

In March 2012, defendant entered an unoccupied home, damaged the interior of the home, and stole tools. Through DNA analysis, law enforcement determined blood found in the residence was defendant's. An amended information (case No. 13F01027) charged defendant with burglary of an uninhabited home. (§ 459.) The information also alleged defendant had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12), and two prior prison terms (§ 667.5, subd. (b)).

While in custody on May 26, 2013, defendant was scheduled to be transported from the Rio Cosumnes Correctional Center to the main jail. Officers searched defendant and found an 18-inch metal rod that had been sharpened into a point at one end in his knee brace. The officers also learned defendant attempted to obtain a knife from another inmate. An information (case No. 13F03333) charged defendant with one count of possession of a sharpened metal instrument while incarcerated in a penal institution. (§ 4502, subd. (a).) The information also alleged defendant had a strike conviction (§§ 667, subds. (b)-(i), 1170.12), and two prior prison terms (§ 667.5, subd. (b)).

Defendant pleaded no contest to possessing a sharp instrument in a penal institution in case No. 13F03333 and one count of burglary in case No. 13F01027. He also admitted the prior strike allegation. The trial court dismissed the remaining counts

2

and allegations with a *Harvey*[3] waiver for purposes of restitution.  The trial court sentenced defendant to the stipulated term of five years four months and ordered defendant to pay various fines and fees.  The trial court granted defendant's certificate of probable cause.

## The First *Faretta* Motion

At the time of defendant's first *Faretta* motion, Sandra Di Giulio from the public defender's office represented him in both cases.  On June 7, 2013, defendant made a *Marsden*[4] motion to replace Di Giulio as appointed counsel.  The trial court denied the motion.  Defendant made a second *Marsden* motion on July 26, 2013.  The trial court denied the motion.  Upon denial of the second motion, defendant made a *Faretta* motion.

"THE DEFENDANT:  Then the Court has forced me to go *Faretta*.

"THE COURT:  I'm not forcing you to do anything.  That's your choice.  If you want to invoke your right to self-representation you have the absolute right.  Is that what you want to do?

"THE DEFENDANT:  I have no other choice.  I'm not getting no representation. I have been trying to put this on about numerous times.  I think it should be put on file, though, too, how many cases is Miss Di Giulio currently representing.  There's no way I can have a fair trial if Miss Di Giulio is --

"THE COURT:  You have a choice to make.  Do you want to represent yourself or not?

"THE DEFENDANT:  No, I don't.  But, I mean, the courts are forcing me to go *Faretta*.

"THE COURT:  You are not being forced.  This is a choice on your own part.

---

[3] *People v. Harvey* (1979) 25 Cal.3d 754.

[4] *People v. Marsden* (1970) 2 Cal.3d 118.

3

"THE DEFENDANT: I have no --

"THE COURT: What do you want to do [defendant]?

"THE DEFENDANT: I'm going *Faretta*.

"THE COURT: All right. You have the right to be represented by an attorney at all stages of this case and if you cannot afford your own attorney the Court will appoint[] one to represent you. Do you understand that?

"THE DEFENDANT: Yup.

"THE COURT: And by the way, these are personal advisements. I'm going to take you through each one. You have Miss Di Giulio here to assist in this process. [¶] Number two, it is generally not a wise choice to represent yourself in a criminal matter. Do you understand that?

"THE DEFENDANT: No, I don't. *I really don't understand this whole court process really*.

"THE COURT: Well, do you understand that you are going to be responsible for your own defense and because, as I assume from our last conversation, you have not been trained in the law, have no experience in criminal defense, you have to understand you are putting you and your personal freedom at significant risk by virtue of taking on this role. However, you have an absolute right to do so. [¶] I have an obligation to ensure that you understand that you are making an informed, intelligent, voluntary decision to do this. [¶] So do you understand that it is not a wise choice to represent yourself in a criminal matter?

"THE DEFENDANT: Again, I don't understand nothing that was said or going on inside this courtroom after, you know, like I said, it's been on record Miss Di Giulio, you know, I mean even with the Public Defender's office they are not representing me. I have nothing --

"THE COURT: Let me characterize what you're doing, [defendant]. What you're doing is refusing to allow Miss Di Giulio to continue representing you; demanding a right

4

to represent yourself, and now you're refusing to recognize the detriment associated with that decision. [¶] In other words, you don't want to move forward; you don't want to move backward; you don't want to move in any direction.

"THE DEFENDANT: That's what I feel like I'm getting from the courts.

"THE COURT: So just tell me. What do you want to do?

"THE DEFENDANT: I haven't been able to get nothing from the courts, really. Well, I have no choice but to go. Actually I have no choice but to go *Faretta.*

"THE COURT: All right. So as a part of that decision do you understand that it is generally not a wise choice to represent yourself in a criminal matter? Do you understand that?

"THE DEFENDANT: I suppose.

[¶] . . . [¶]

"THE COURT: So, [defendant], understand that if you go to trial and you're convicted on all counts and all prior conviction allegations are found to be true, your maximum exposure as computed here today, appears to be 11 years and 4 months. [¶] Further understand that the Court cannot help you present your case or grant you any form of special treatment because you are representing yourself. [¶] Understand that you will be opposed by a trained prosecutor, an individual who clearly has a law degree, has been licensed to practice law in the State of California, and has experience in the role of prosecutor with the District Attorney's office. [¶] Understand that you must comply with all the rules of criminal procedure and all Rules of Evidence just as an attorney must. [¶] Understand that if you are convicted you cannot appeal based on the claim that you are not competent to represent yourself. [¶] But if you're disruptive during the course of any of the proceedings you'll be removed from the courtroom and an attorney will be brought in to finish your case. [¶] And understand that you have the right at any time to hire your own attorney; however, the Court will not delay your case to allow an

attorney to prepare to represent you.  [¶]  Do you understand each of the advisements that I have given you this morning?

"THE DEFENDANT:  No, not really.  I really don't.  I am really having a hard time.

"THE COURT:  What part of the advisement do you not understand, [defendant]?

"THE DEFENDANT:  Especially, I can't believe you're going to have counsel sit here after everything that she sat here and -- what has she done?

"THE COURT:  Just focus on my question for a moment.  What part of the advisement do you not understand?

"THE DEFENDANT:  *I don't understand the whole court process*.

"THE COURT:  All right.  Then your motion for *Faretta* is denied.  Miss Di Giulio will remain as counsel of record.

"THE DEFENDANT:  No, she's not going to represent me.

"THE COURT:  [Defendant], we're not going to go back and forth and back and forth based upon your individual whim.  If you do not understand the admonishments --

"THE DEFENDANT:  I understand.  I understand.  I understand.  She's not going to represent me.

"THE COURT:  She's going to represent you.  I'm not going to allow you to represent yourself.

"THE DEFENDANT:  There's no way.  There's no way she is going to represent me, especially when -- especially when -- there's been no deal, and everything else, we're wasting the Court's time, the money, and everything else, the taxpayers' and everything else, when she hasn't come up with a deal or nothing.  [¶]  She's forcing me to go to trial. The courts -- the courts is forcing me with this whole thing.  They have her --

"THE COURT:  Your *Faretta* motion is denied.  Your attorney is Miss Di Giulio. And I'll give you your next date.

"THE DEFENDANT: This court is fucking -- it's railroading me. That's what this court is doing.

"THE COURT: You are next on calendar on August 2nd for preliminary hearing in the case ending 3333.

"THE DEFENDANT: *Come here.*" (Italics added.)

The parties then discussed further scheduling issues, which the defendant interrupted, saying, "Jesus crap. This court, this whole -- this is a fucking court system."

After completing the scheduling discussions and verifying the date for trial, the court said, "[Defendant], the right to represent yourself is foundational in the system, and I respect it immensely. I call into question whether or not you have appreciation for what is necessary in connection to that process. [¶] The reason I have denied your *Faretta* here this morning is because you flately [*sic*] refused to participate in the process that obligates me to ensure that you have full understanding of the detriment connected with self-representation. You refused to go down that path today. You refuse to recognize the various detriments associated with self-representation. And it's because of that refusal that I can't undertake your motion for self-representation. [¶] At some point in the future, if you reconsider what you have done here today, I am quite confident that myself or another judge will at least embark upon this process again and consider self-representation. [¶] But the way you acted in court today, the way you responded to my questions, the way you shouted at me, shouted obscenities at me, and the way you flately [*sic*] refused to even consider the detriment connected with this process I, unfortunately, have no choice but to deny that request. [¶] And that is the basis of my denial. It's not because I don't want you to represent yourself. It's not because I don't think you have a right to represent yourself. It's because I cannot ensure that you have a full understanding of the detriment connected with that self-representation."

7

**Further Proceedings and the Second *Faretta* Motion**

Defendant refused to come to court on August 2, 2013. The matter was set for trial on September 12, 2013. Defendant refused to be transported to the court for the morning session, agreed to come in the afternoon, and then refused again to come in the afternoon session. The court signed a cell extraction order. Di Giulio assured the court she would visit defendant and request that he appear for trial. The court set the matter for the morning of September 13, but after defendant was transported to the courthouse, he refused to walk up the stairs from the fourth floor to the fifth floor where the courtroom was situated, purportedly because he had sustained a knee injury.[5] The trial was moved from a courtroom on the fifth floor to a courtroom on the fourth floor to facilitate movement of defendant during trial.

On September 18, 2013, during the selection of the jury in the burglary case, the People requested a continuance, because a key prosecution witness had undergone surgery and was on medically ordered bed rest. The court granted the continuance and discharged the jury panel. Di Giulio told the court the defense would be reassigned to a different public defender. The cases were scheduled for trial on October 1, 2013, with trial readiness conference set on September 27, 2013. Thereafter, the cases were assigned to a new public defender, Addie Young.

Young appeared at the trial readiness conference on defendant's behalf on September 27, 2013, and the jury trial date was confirmed. On October 1, 2013, the date set for trial, Young again appeared on defendant's behalf. The defense requested a continuance due to the unavailability of defendant's mother, a witness in the case. The

---

[5] Other than a public elevator, the only way for an in custody defendant to get from the fourth floor to the fifth floor in the courthouse is by walking up the stairs. The sheriff's office declined to use the public elevator because of defendant history of 11 write-ups between December 4, 2012, and August 2, 2013, involving fights with other inmates and the weapon found on his person, unless he was placed in a prorestraint chair.

matter was set for trial on November 5, 2013, with a trial readiness conference on October 31, 2013.

At some point thereafter, defendant then contacted Young and indicated he wanted to enter a change of plea. Young set the matter on calendar for October 18, 2013. Between July 26, 2013, and October 18, 2013, defendant had 10 court appearances, two with Young.

On October 18, 2013, almost immediately after the case was called, defendant talked to Young, and Young then told the court defendant wanted to make a *Faretta* motion. After re-reviewing the file, the court noted that the trial date was a little more than two weeks away and then stated, "So at the outset one of the very significant concerns I have with regard to the reassertion of the Defendant's rights under Faretta is whether or not it's being asserted for purposes of delay." On that point the court directed a series of questions to counsel.

In response to the trial court's questions, Young stated she would be ready for trial on both cases on November 5. She expected there would be 16 witnesses in total for both cases; 14 were in the burglary case, which was scheduled to be tried first. One of the witnesses, defendant's mother, needed several weeks' notice before her appearance to arrange time off from work and travel from outside of California. The November 5, 2013, trial date was selected specifically because of her availability on that date. In addition, Young believed the burglary case was somewhat complex by virtue of the DNA evidence, including issues of chain of custody, collection of the evidence, and the examination of the criminalist. In addition, defendant's mental state upon entering the homes was at issue. Specifically, witnesses were expected to testify he was suicidal at the time of the offense, and his blood was in the homes because he was cutting his arms and wrists with razor blades.

The trial court noted defendant had been in court approximately nine times since the first *Faretta* motion. "Stepping back, [defendant], from what I have been told, and

9

from what I have experienced with you, this is what I find.  [¶]  It does appear to me, based upon the totality of the information that's before me, that this motion, to wit, the *Faretta* request, is asserted for purposes of delay.  [¶]  You have previously asserted the *Faretta* motion on July 26, 2013.  You have been in court what appears to be nine times prior to today and never reasserted that *Faretta* motion until the matter was on today, essentially, on the eve of trial, which is only approximately two weeks away.  [¶]  The case has some complexity to it to include DNA evidence in one of them in terms of your involvement, your alleged involvement in the burglaries.  It has -- they have, I'll state in the plural because you have two cases proceeding to trial concurrently, approximately 16 separate witnesses, potentially more, potentially a few less, but in the ballpark of 16 witnesses, which is a significant number of witnesses to handle and to prepare and to present.  [¶]  The cases do have, as indicated, some complexity because of the DNA and the handling of the DNA and the processing of it and the chain of custody connected with it, which are always issues that involve themselves in the presentation of DNA.  [¶]  And so considering all of these factors, and now two weeks before trial you step forward for the first time since late July to reassert your *Faretta* motions, there's very little that I can gather from that other than the fact that you're attempting to delay these proceedings. And a delay or delay is not a valid basis for a *Faretta* motion."

"THE DEFENDANT:  I'm not delaying the proceedings when the officer had to have a boob job done and stop my trial last time.

"THE COURT:  I don't know what you're speaking about, but all I'm focused on is whether or not I can grant you this request.  [¶]  The right to self-represent is extremely important.  And it's guarded.  And I'm responsible for guarding it and turning it over to you as long as it's not designed for an ulterior purpose.  [¶]  But when you come in on the last appearance before confirmation of trial in two weeks and you assert or reassert it after, essentially, about almost three months from July, late July to late October, there's little else that I can gather from that, other than that you're doing it to delay these

10

proceedings.  [¶]  Your attorney is ready to proceed to trial.  The witnesses, the vast majority of them, except for maybe one or two are all subpoenaed.  Trial binders are ready.  Examinations have been prepared.  And everything is ready.  And then you step in two weeks before and you say, nope, I want to be my own attorney, again, when you could have done this back in July but you refused to go through the process with me.  [¶]  And so your request for *Faretta* today is denied because I find that it is asserted solely for the purpose of delay.

[¶] . . . [¶]

"THE DEFENDANT:  I want to get this on the record that the only reason I'm filing *Faretta*, also, too, I have got a new counsel.  The only reason -- I'm not trying to delay the courts.  I have got a new counsel, though, too, that has been appointed to my case.  I don't have the original counsel who was doing my other case at the time, you know.  She came very new to my case.  That's the only reason I'm filing the *Faretta* today.  [¶]  The last time I was filing the *Faretta*, maybe there was a misunderstanding, my statements in the courtroom, so I wasn't understanding the Court's procedures, everything that was going on right then at that time.  [¶]  And, no, I do understand how I -- you know, I am representing myself, and everything else.  But, you know, and all the questions that you asked last time, but *I didn't understand the Court's proceedings,* the way everything was going on.  How I was being railroaded and everything else, no, I wasn't understanding that.  *I wasn't understanding each and every element of the crime*; how they bound me over for trial, no, I wasn't understanding that.

"THE COURT:  I recall going through those admonitions with you very slowly in a very detailed fashion, and I was satisfied that *you were playing games with me at the time*, which is why I stopped the process.  You now have a new and different counsel, one who is fully prepared to represent your interests.

11

"THE DEFENDANT: I don't have -- I am saying nothing bad about her. Hell, yes, she is doing a fine job, but I think I would rather represent myself. I'm not saying nothing bad about --

"THE COURT: I understand, but your request is denied." (Italics added.)

## DISCUSSION

Defendant contends the trial court abused its discretion by denying his second *Faretta* motion. He argues the court erred in denying his motion without making the inquiry required by *Faretta*. Alternatively, defendant asserts the trial court abused its discretion because its finding that defendant's motion was for purpose of delay was not supported by the record because defendant never requested a continuance.

A criminal defendant has a right to represent himself or herself at trial under the Sixth Amendment to the United States Constitution. (*Faretta*, *supra*, 422 U.S. at pp. 835-836; *People v. Williams* (2013) 58 Cal.4th 197, 252.) " 'A trial court must grant a defendant's request for self-representation if three conditions are met. First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.] Third, he must make his request within a reasonable time before trial. [Citations.]' " (*People v. Stanley* (2006) 39 Cal.4th 913, 931-932.) Additionally, a *Faretta* motion made for the purpose of delay may be denied. (*People v. Lynch* (2010) 50 Cal.4th 693, 721-722 (*Lynch*), overruled on other grounds in *People v. McKinnon* (2011) 52 Cal.4th 610, 636-643; *People v. Butler* (2009) 47 Cal.4th 814, 825; *People v. Marshall* (1997) 15 Cal.4th 1, 23.) An erroneous denial of a timely *Faretta* request is reversible per se. (*Williams*, at p. 253; *Butler*, at p. 824.)

Here, the trial court determined that defendant made his *Faretta* motion for the purpose of delay. We review the trial court's denial of his *Faretta* motion for abuse of discretion. (*People v. Jackson* (2009) 45 Cal.4th 662, 690; *People v. Windham* (1977)

12

19 Cal.3d 121, 128 (*Windham*).) We conclude the trial court did not abuse its discretion in making this determination and denying the motion.

Defendant had previously made a *Faretta* motions and two *Marsden* motions. In reflecting back on the first *Faretta* motion, the trial court said defendant was attempting to delay the process and "playing games" with the court. After the denial of his first *Faretta* motion, defendant repeatedly refused to come to court. Twice he refused to come to court on the day scheduled for trial. In the three months since his last *Faretta* motion, defendant had made 10 court appearances. On September 18, 2013, when the aborted trial was continued, defendant's former attorney told the court that new counsel would be coming onto the case, so defendant knew he was getting a new attorney at least as of that date. New defense counsel first appeared in court on defendant's behalf nearly a month and a half before the trial date. Defendant again appeared in court with new counsel over a month before the trial date, and two weeks before he made the second *Faretta* motion. There was ample opportunity for defendant to renew his *Faretta* motion well before October 18, 2013, when he belatedly made his second request.

Defendant points out that he never expressly requested a continuance and told the court he was not making the second *Faretta* motion for the purpose of delay. But defendant never told the court he would be ready for trial on the scheduled trial date, even after the court told defendant it was concerned that his *Faretta* motion was a delaying tactic. In the absence of defendant's assurance that defendant would be ready to proceed on the trial date, it was reasonable for the trial court to infer defendant would have needed and desired additional time to prepare appropriately, particularly given the number of witnesses, complexity of the case, and defendant's prior indications in the first *Faretta* motion that he did not understand the court process and did not understand the elements of the offenses with which he was charged. Some 16 witnesses were to testify in defendant's two cases, 14 of the witnesses were in the burglary case, which was proceeding to trial first. The burglary case involved complex issues relating to DNA

13

evidence, chain of custody, collection of the evidence, and the examination of the criminalist. Also, the defendant's mental state upon entering the homes, whether he intended to commit suicide rather than a felony or theft in the home, was a critical defense point. Indeed, under the circumstances, had defendant said he was not seeking a continuance and would have been ready to proceed to trial on November 5, 2013, the court would have been justified in being skeptical and anticipating a subsequent plea for continuance. Defense counsel was ready to proceed to trial on the scheduled date and witnesses had been subpoenaed. At least one of the witnesses would have had challenges rescheduling, and in fact the current trial date had been set to accommodate her schedule. The trial court's specific observation that defense counsel was "fully prepared to represent" defendant implies it disbelieved defendant's purported concern about defense counsel being "new" to his cases and that being the "only reason" he sought to represent himself. Indeed, defendant acknowledged he had no complaints about counsel and said she was doing a "fine job." Based on its previous experience with defendant, including "playing games" at the first *Faretta* motion and his refusals to come to court, the trial court was justified in disbelieving defendant's claim that he was not now trying to delay the proceedings and that the only reason he wanted to represent himself was because his attorney was "new." Accordingly, we find no abuse of discretion in the trial court's denial of defendant's second *Faretta* motion.[6]

Even if defendant's purpose was not to delay the proceedings, his *Faretta* motion was nevertheless untimely given the totality of the circumstances. When the trial court does not state untimeliness as its reason for denying a *Faretta* motion, we independently

---

[6] Because the trial court justifiably determined defendant's *Faretta* motion was for the purpose of delay, there was no need to conduct the *Faretta* inquiry into whether defendant voluntarily and knowingly waived his right to counsel, and we reject defendant's contention that the trial court erred because it did not do so.

14

review the record to determine whether the motion would properly have been denied on this ground.  (*People v. Halvorsen* (2007) 42 Cal.4th 379, 433, fn. 15.)  A trial court may deny a defendant's *Faretta* motion if it is not made within a reasonable time prior to the start of trial.  (*People v. Williams* (2013) 56 Cal.4th 165, 193 (*Williams*) [the constitutional right to self-representation "must be asserted within a reasonable time before trial"]; *Windham*, *supra*, 19 Cal.3d at pp. 127-128 ["to invoke the constitutionally mandated unconditional right of self-representation a defendant in a criminal trial should make an unequivocal assertion of that right within a reasonable time prior to the commencement of trial"].)  "The timeliness requirement 'serves to prevent a defendant from misusing the motion to delay unjustifiably the trial or to obstruct the orderly administration of justice.'  [Citation.]"  (*People v. Doolin* (2009) 45 Cal.4th 390, 454.)  "[T]imeliness for purposes of *Faretta* is based not on a fixed and arbitrary point in time, but upon consideration of *the totality of the circumstances* that exist in the case at the time the self-representation motion is made."  (*Lynch*, *supra*, 50 Cal.4th at p. 724, italics added.)  In determining whether the motion is timely, the trial court may properly consider "not only the time between the motion and the scheduled trial date, but also such factors as whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation."  (*Lynch*, at p. 726.)  This list of factors includes factors we considered in determining the trial court did not abuse its discretion in finding that defendant's motive in making the motion was to delay the proceedings, and consideration of them in the context of the timeliness analysis leads us to the conclusion that defendant's motion was not timely.

 " 'When a motion for self-representation is not made in a timely fashion prior to trial, self-representation no longer is a matter of right but is subject to the trial court's discretion.  [Citations.]'  [Citation.]"  (*Williams*, *supra*, 56 Cal.4th at pp. 193-194.)

15

Though the trial court here did not ground its ruling on untimeliness, we note that in exercising discretion to rule on an untimely *Faretta* motion, a "trial court should consider factors such as ' "the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." ' [Citation.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 959; see also *People v. Scott* (2001) 91 Cal.App.4th 1197, 1203-1204.)

In this case, these factors would have justified denying the untimely *Faretta* motion. As the trial court recognized and defendant acknowledged, there were no deficiencies in the quality of defense counsel's representation. Defendant's proclivity to substitute counsel is apparent from his two prior *Marsden* motions and his attempted abandonment of Young, even though she was doing "a fine job." In light of these circumstances, the alleged reason for his request -- that Young was "new" to the case -- rang hollow. The cases were scheduled to go to trial in only a little over two weeks and given the complexity of the first case, a delay prior to or during the trial because of defendant's lack of preparation was all but inevitable.

Accordingly, not only did the trial properly exercise its discretion in determining defendant's belated *Faretta* motion was made for purpose of delay, but it also would not have been an abuse of discretion to find that the motion was untimely under the circumstances presented here.

**DISPOSITION**

The judgment is affirmed.

                                            MURRAY          , J.

We concur:

          RAYE          , P. J.

          HOCH          , J.

17