Filed 10/9/15  P. v. Rodriguez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JORGE ALBERTO RODRIGUEZ,<br><br>    Defendant and Appellant. | D067011<br><br><br>(Super. Ct. Nos. SCD253339, SCD253592 & SCD255639) |


APPEAL from a judgment of the Superior Court of San Diego County, Lorna A. Alksne, Judge.  Affirmed.


Marianne Harguindeguy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene Sevidal and Barry Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

Jorge Alberto Rodriguez pled guilty, pursuant to three separate criminal informations, to one count each of resisting executive officers (Pen. Code, § 69), evading an officer with reckless driving (Veh. Code, § 2800.2), and unlawful taking or driving of an automobile without consent of owner (Veh. Code, § 10851). He also admitted to a strike prior in each case and, in the vehicle theft case, a prior vehicle theft conviction.

On appeal, Rodriguez contends the court erroneously denied his motion to represent himself. He also asserts the court committed prejudicial error by denying his motion to later withdraw his guilty plea on the grounds that he does not write or understand the English language. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The police initially arrested Rodriguez on suspicion of stealing a Honda Accord. Five days after being released on bail, Rodriguez engaged police in a high-speed chase and was arrested for stealing a second car.

At a readiness conference, Rodriguez moved to replace his appointed counsel under *People v. Marsden*,[1] contending the attorney had not sent him certain discovery items in a timely manner. The court denied his request as meritless.

A month later, Rodriguez was again arrested for stealing another Honda Accord. Rodriguez resisted arrest by pushing against one of the officers and running away, but the police soon recaptured him.

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

2

On the first day of trial, before any potential jurors were called into the courtroom, Rodriguez made a second *Marsden* request. He asserted he did not feel comfortable with his appointed counsel and claimed his attorney had not spoken to him about his case. After investigating the attorney's qualifications and preparedness, the court denied Rodriguez's motion.

Rodriguez immediately moved to represent himself under *Faretta v. California*.[2] The court, after a brief inquiry into Rodriguez's knowledge of the law, concluded he did not have the legal sophistication to make an intelligent waiver of counsel. Rodriguez later submitted a completed *Faretta* waiver form, acknowledging all of the dangers and disadvantages of self-representation. The next day, without any further ruling on the *Faretta* motion, the court took Rodriguez's guilty plea.

At the sentencing hearing, Rodriguez moved to withdraw his guilty plea on the ground that he did not read or understand English. The court denied his motion and sentenced him to six years in state prison.

DISCUSSION

I. Faretta *Motion*

Under the Sixth Amendment of the United States Constitution, defendants have a right to represent themselves in criminal trials. (*Faretta, supra,* 422 U.S. at p. 819.) A trial court must grant a defendant's motion for self-representation if the request is knowing, intelligent, unequivocal, and timely, that is, made within "a reasonable time

---

[2]     *Faretta v. California* (1974) 422 U.S. 806 (*Faretta*).

prior to the commencement of trial." (*People v. Lynch* (2010) 50 Cal.4th 693, 721, 722.) A knowing, intelligent, and unequivocal motion made after this period is addressed to the sound discretion of the trial court. (*People v. Clark* (1992) 3 Cal.4th 41, 98 (*Clark*).) In exercising its discretion, the court should consider factors such as "quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*People v. Windham* (1977) 19 Cal.3d 121, 128, 129 (*Windham*).) To determine whether the defendant properly invoked his right to self-representation, the reviewing court examines the entire record de novo. (*People v. Dent* (2003) 30 Cal.4th 213, 218.)

Rodriguez argues that his *Faretta* motion was knowing and intelligent, unequivocal, and timely. The Attorney General concedes that the waiver was knowing and intelligent, but claims it was made in an equivocal and untimely manner.

A. Unequivocal

To protect the constitutional right to counsel, one of the trial court's tasks in ruling on a *Faretta* motion is to determine whether the defendant truly wishes to represent himself. (*People v. Marshall* (1997) 15 Cal.4th 1, 23 (*Marshall*).) The court should evaluate whether the defendant has stated the motion clearly and whether the defendant's statements or actions create any ambiguity as to his desire to represent himself. (*Ibid.*) A motion for self-representation "made in passing anger or frustration" may be denied. (*Ibid.*)

4

Rodriguez plainly and unambiguously stated his wish to represent himself after the denial of his second *Marsden* motion. Although his request was possibly born of anger or frustration, Rodriguez affirmed his desire to proceed in propria persona by filing a *Faretta* waiver form with the court. This subsequent action was not taken in the heat of the moment and suggests a firmness of conviction sometimes not present in other cases. (Cf. *Marshall, supra*, 15 Cal.4th at p. 24 [*Faretta* motion was equivocal where defendant's request was "rambling and laced with requests for time to think . . . ."].)

B. <u>Timely</u>

Rodriguez brought his *Faretta* motion on the morning of the trial. As such, the request was not made "within a reasonable time prior to the commencement of trial." (See *People v. Moore* (1988) 47 Cal.3d 63, 79-81 [*Faretta* motion made on the day trial was set to begin would have been well within the court's discretion to deny]; *People v. Scott* (2001) 91 Cal.App.4th 1197, 1205 [*Faretta* motions made "just prior to the start of trial" are untimely]; *People v. Hill* (1983) 148 Cal.App.3d 744, 757 [*Faretta* motion made five days before trial was untimely and within trial court's discretion to deny].) Under these circumstances, the trial court should have applied the factors set forth in *Windham* to determine whether to deny the tardy motion. (*Clark*, *supra*, 3 Cal.4th at p. 98; *Windham*, *supra*, 19 Cal.3d at pp. 128-129.) Though the record does not clearly establish that the court considered each of the *Windham* factors, after reviewing the

5

record and applying the *Windham* factors, we believe the trial court properly exercised its discretion.[3]

The court evaluated the first factor, the quality of counsel's representation of defendant, during Rodriguez's July 28 *Marsden* hearing—a mere 10 minutes before Rodriguez brought his *Faretta* motion. During this hearing, the court inquired into the defense counsel's work experience and preparations made for Rodriguez's case. Based on his testimony, the court concluded he was adequately representing Rodriguez.

The second factor, the defendant's proclivity to substitute counsel, also weighed in favor of denying the motion. Rodriguez originally moved for the substitution of appointed counsel on March 21. The motion was denied, but the office of the public defender assigned the case to a different attorney, effectively granting Rodriguez's request. Though his wish was fulfilled, Rodriguez was still not satisfied. He ultimately made another *Marsden* request for new counsel on July 28. This behavior evidenced a pattern of discontent with appointed counsel and a proclivity to bring unnecessary *Marsden* motions.

During Rodriguez's second *Marsden* hearing, the court also considered the third factor, the reasons for the request. Rodriguez's justifications for his second *Marsden* request were contradictory, vague, and insubstantial. He complained that counsel had not talked to him about his case, but, in the next breath, mentioned that he did not want to

---

3        In *Clark*, the court did not find an abuse of discretion where the trial court did not explicitly consider the *Windham* factors. (*Clark*, *supra*, 3 Cal.4th at pp. 98-101.) As we do here, the *Clark* court independently reviewed the record and weighed the *Windham* factors. (*Clark*, at pp. 98-101.)

discuss his case with counsel. He also broadly and baselessly asserted that he did not feel comfortable with his appointed attorney. Due to the inadequacy of his justifications, the trial court denied his motion. Because Rodriguez brought the *Faretta* motion in response to his *Marsden* motion being denied, the superior court could have reasonably concluded that the motivation for both requests was the same and that the reasons for his *Faretta* request were unsound.

The length and stage of the proceedings also weighed against granting the *Faretta* motion. By the time Rodriguez brought his *Faretta* motion (on the first day of trial), the proceedings had been ongoing for half a year. In addition, granting the motion would have disrupted or further delayed the proceedings. Although it impermissibly focused on his legal skills, the trial court's *Faretta* inquiry revealed that Rodriguez was not prepared to represent himself. He did not understand any of the legal concepts or procedures applicable to his case and admitted he would have to ask for some time to research the relevant law. Thus, granting Rodriguez's motion would have caused an unnecessary delay.

In sum, the *Windham* factors militate against granting Rodriguez's untimely request to represent himself in propria persona. We affirm the trial court's denial of Rodriguez's *Faretta* motion.

## II. *Right to an Interpreter*

Rodriguez asserts that the trial court committed a prejudicial error by denying his request to withdraw his guilty plea on the grounds that he required an interpreter. The

Attorney General argues that Rodriguez could, in fact, speak English and did not need an interpreter and, therefore, the trial court properly exercised its discretion.

Under the California Constitution, "[a] person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." (Cal. Const., art. I, § 14.) In assessing a trial court's decision to deny interpreter services, the reviewing court makes two determinations. First, the court ascertains whether the lower court erred. (*People v. Rodriguez* (1986) 42 Cal.3d 1005, 1013 (*Rodriguez*).) Second, if an error exists, the court determines whether the error was harmless beyond a reasonable doubt. (*Ibid.*)

There is no clear standard by which the reviewing court determines whether the trial court wrongly denied access to an interpreter. In *Rodriguez*, the California Supreme Court used the California Standards of Judicial Administration as a guide. (*Rodriguez*, *supra*, 42 Cal.3d at p. 1013.) The California Standards of Judicial Administration require a court to provide an interpreter where, after examination, it concludes that the party cannot understand and speak English well enough to participate fully in the proceedings and assist counsel. (Cal. Stds. Jud. Admin., § 2.10.) The court must examine a party's English language skills where a party or counsel requests that it do so or where it appears to the court that a party does not understand English well enough to fully participate in the proceedings. (*Ibid.*) Further, error is established only where the trial court " ' " 'has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (See *In re Raymundo B.* (1988) 203 Cal.App.3d 1447, 1456; *People v. Carreon* (1984) 151 Cal.App.3d 559, 566-567.)

8

Rodriguez, who was born in the United States and had an 11th grade education, did not ask for an interpreter at any point in the proceedings or at any of his numerous court appearances. When he made the request to withdraw his guilty plea on this basis, the court reacted incredulously, indicating its disbelief in Rodriguez's assertion he could not understand English. The court's assessment of the credibility of Rodriguez's contention was amply borne out by the record. In his first *Marsden* hearing, Rodriguez competently described his problems with his counsel's legal tactics in English. He demonstrated a comparable mastery of the English language during his second *Marsden* hearing. His responses in his *Faretta* inquiry, though brief, were contextually appropriate and displayed no discomfort with the English language. Finally, during his sentencing hearing, Rodriguez explained, in English, his need for an interpreter.

In sum, the trial court personally witnessed abundant evidence of Rodriguez's competency with the English language. Accordingly, under the California Standards of Judicial Administration, there was no need for an examination and, by extension, no need for an interpreter. The trial court did not abuse its discretion by denying Rodriguez's motion to withdraw his guilty pleas.

DISPOSITION

The judgment is affirmed.

PRAGER, J.*

WE CONCUR:


McINTYRE, Acting P. J.


IRION, J.

---

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.