Filed 1/12/16  P. v. Wills CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B256339 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BA420699) |
| LAWRENCE CHRISTOPHER WILLS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall and Frederick N. Wapner, Judges.  Affirmed.

Janet J. Gray, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Lawrence Christopher Wills appeals from a judgment entered after a jury verdict finding him guilty of one count of robbery in violation of Penal Code section 211, and one count of resisting a police officer in violation of section 148, subdivision (a)(1).[1] Wills challenges the denial of his motion for self-representation under *Faretta v. California* (1975) 422 U.S. 806. Wills also argues the trial court erred by failing to order an evaluation of his competence to stand trial after determining he was not competent to represent himself. Finally, Wills argues he was denied effective assistance of counsel because his attorney failed to move to suppress evidence of the victim's identification of Wills in a six-pack photographic lineup. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Crime*

On January 22, 2014, at approximately 12:30 p.m., Michelle Nah was riding on the Metro Blue Line near Washington Boulevard, Los Angeles, and texting her friend. Wills and three "girls" entered the train. Shortly after passing the San Pedro Station, one of the girls, without warning, punched Nah in the face, breaking her nose and causing her to bleed profusely.

Nah ducked down to protect her face and was struck in the back of the head. The assailant tried to take Nah's iPhone while yelling at Nah to let go of it. Wills stood a few inches from the assailant while she attacked Nah. While Nah's head was still down, someone tried to take Nah's purse. Nah refused to let go of her purse and said, "No, now you're not going to take my purse away." Wills pulled Nah away from the assailant and

---

[1]    All statutory references are to the Penal Code.

2

forcefully removed the phone from Nah's hand. Wills and the assailant immediately ran off of the train. Cameras maintained by the Transit Authority System captured the altercation, which lasted about 30 seconds.

After the attack, Nah and other passengers on the train got off at the next stop and contacted the police. Nah spoke with the sheriff's deputies who responded and provided them with her Apple user name and password so they could use the Find-My-iPhone application to track the stolen phone. Nah also gave a description of the clothes Wills was wearing.

Less than two hours later, Deputy Delwin Lampkin, one of the deputies with whom Nah spoke, received a notification from the Find-My-iPhone application that the phone was active and the application was tracking the phone's location. The tracking application took Deputy Lampkin and other law enforcement officers to a fast-food restaurant on South Central Avenue, Los Angeles. Just before entering the restaurant, Deputy Lampkin used the Find-My-iPhone application to cause the stolen phone to emit a sonar-like pinging sound, which he heard coming from Wills's location. Deputy Lampkin left the restaurant to determine if any of the other deputies on the scene had already spoken to Wills. Wills followed Deputy Lampkin outside. When Deputy Lampkin asked Wills whether he had a phone, Wills initially stated it was in his backpack, then said it was in his pocket. Deputy Lampkin took the phone from Wills and returned it to Nah. Nah identified the phone as hers because it had a picture of Nah with her boyfriend as the background wallpaper. Deputy Lampkin showed Nah a single photograph of Wills as a possible suspect.

The deputies arrested Wills and placed him in a patrol car. Wills smelled of alcohol and had a bottle of liquor. He did not appear intoxicated. He was not slurring his words and did not appear unsteady.

After the deputies repeatedly asked Wills to place his feet in the patrol car, Wills became loud and disruptive. He refused to place his feet inside the car. After he eventually relented and complied with the deputies' orders, Wills began banging his head on the window and cage of the patrol car. When the deputies opened the door to prevent

3

Wills from injuring himself, Wills said he was not going to go to jail. Wills attempted to escape from the car headfirst by pushing off the closed door on the opposite side of the car with his feet. After 15 to 20 minutes of Wills refusing to comply with the deputies' instructions, Deputy Lampkin sprayed him with pepper spray. Wills then complied.

The deputies also confiscated the backpack Wills had with him in the fast-food restaurant. Inside the backpack was a hat. The video recording of Nah's attack shows that the male assailant had a backpack and a hat, and was wearing clothes like the clothes Nah had described and that Wills was wearing when he was arrested.

A few days later, Detective Amber Veatch, who had been assigned to investigate the case, showed Nah a six-pack photographic lineup including the same photograph of Wills that Nah had already seen. Within seconds, Nah identified Wills as one of her assailants.

Wills testified at trial that the day Nah was robbed he "lost track of everything" after drinking almost half a gallon of vodka. He described his memory as "faint" and "not too . . . detail-ly," and later admitted that he had no memory of the day at all. He said that he was not the man pictured in the video recording of the attack, and that he did not know the other people on the video recording. He testified at first that he did not remember being on the Blue Line train the day of the attack, and then, on cross-examination, admitted that he had been on the Blue Line that day. He recanted various statements he had previously made to law enforcement, including that he had been trying to break up the fight on the train, and stated he had not told law enforcement the truth when he described the details of the robbery and had made it all up because he had no memory of that day. He denied owning the backpack and the hat he had with him at the fast-food restaurant, and he said that he found Nah's iPhone, although he did not remember where or when he found it.

B.     *Wills's <u>Marsden</u> and <u>Faretta</u> Motions*

On March 20, 2014 Wills moved pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 for appointment of new counsel because he was experiencing "a little lack of

4

communication" with his attorney, he was dissatisfied with the prosecution's offer, and he had a mental health condition for which he wanted treatment. The court denied the motion. On April 10, 2014 Wills again asked for new court-appointed counsel. The trial court denied Wills's second request, finding that there was "no reason" to relieve Wills's current counsel.

On April 16, 2014, the day trial was scheduled to begin, Wills made a motion to represent himself, and asked the court to continue the trial because he was not ready to proceed. Wills also indicated that his first choice was for the court to appoint a different attorney to represent him, but that he preferred to represent himself rather than proceed with his current court-appointed attorney. The court again stated that frustration over not receiving a satisfactory plea offer was not a sufficient reason to appoint a new attorney. The court found that Wills's waiver of his right to counsel was not knowing, intelligent, and voluntary. The court also noted that Wills wore a yellow jumpsuit, which suggested to the court that Wills had some emotional issues, "as does the pre-plea probation report." The court denied the motion on two grounds: (1) granting Wills's untimely motion would delay the case because Wills was not ready to proceed, and (2) Wills's waiver of his right to counsel was not voluntary.

On April 18, 2014, after trial had commenced, Wills made another motion for self-representation, this time asking for a continuance of three weeks to familiarize himself with the case. The court again denied the motion, stating that there was "no problem with the quality of his representation [by Wills's attorney] in this case," that trial had already started, and that the delay would waste the resources of the jurors and disrupt the life of the civilian witness.

C.    *Verdict and Sentencing*

The jury convicted Wills on both counts. The court sentenced Wills to the upper term of six years on the robbery conviction, and a concurrent term of six months in county jail on the resisting arrest conviction. Wills timely appealed.

5

**DISCUSSION**

A.     *The Trial Court Did Not Abuse Its Discretion in Denying Wills's Motion To Represent Himself*

The trial court denied two motions by Wills to represent himself, one on April 16, 2014, the day trial was scheduled to begin, and one on April 18, 2014, during the trial. Wills challenges only the first order.

1.     *The Right of Self-Representation*

Under the Sixth Amendment of the United States Constitution, a criminal defendant has a "constitutional right to conduct his own defense." (*Faretta v. California, supra,* 422 U.S. at p. 836.) The right to self-representation is independent of the guarantees of the Sixth and Fourteenth Amendments "that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." (*Id.* at p. 807.) However, "the right of self-representation is not absolute." (*Indiana v. Edwards* (2008) 554 U.S. 164, 171; see *People v. Butler* (2009) 47 Cal.4th 814, 825.) While a timely, unequivocal *Faretta* motion invokes "the nondiscretionary right to self-representation," an untimely motion for self-representation does not. (*People v. Lawrence* (2009) 46 Cal.4th 186, 191-192; see *People v. Bradford* (1997) 15 Cal.4th 1229, 1365 [if a motion for self-representation is untimely, "self-representation no longer is a matter of right but is subject to the trial court's discretion"].) "In order to invoke the constitutionally mandated unconditional right of self-representation, a defendant must assert that right within a reasonable time prior to trial. . . . If the motion is untimely . . . the defendant has the burden of justifying the delay." (*People v. Horton* (1995) 11 Cal.4th 1068, 1110.) "A trial court must grant a defendant's request for self-representation if the defendant knowingly and intelligently makes an unequivocal and timely request after having been apprised of its dangers." (*People v. Valdez* (2004) 32 Cal.4th 73, 97-98.) "*Faretta*

6

motions must be both timely and unequivocal." (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1002.)

In determining whether a motion for self-representation is untimely, "a trial court may consider the totality of the circumstances," including "not only the time between the motion and the scheduled trial date, but also such factors as whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation." (*People v. Lynch* (2010) 50 Cal.4th 693, 726, overruled on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 636-643.) The trial court need not explicitly consider all of the factors, as long as the record contains sufficient evidence to support implicit consideration of the factors. (*People v. Scott* (2001) 91 Cal.App.4th 1197, 1206.) The court may also consider whether the defendant will need a continuance. (See *People v. Windham* (1977) 19 Cal.3d 121, 128, fn. 5 (*Windham*).) "Moreover, a trial court rarely should grant such a motion on the day set for trial. [The California] Supreme Court has 'held on numerous occasions that *Faretta* motions made on the eve of trial are untimely.' [Citation.] A motion made that close to the day set for trial is 'extreme' [citation] and now is disfavored." (*People v. Powell* (2011) 194 Cal.App.4th 1268, 1277.)

### 2. *The Motion for Self-Representation Was Untimely*

The trial court considered the appropriate factors and determined, under the totality of the circumstances, that Wills's motion for self-representation was untimely. Wills argues that, "even though [Wills's motion] was made just prior to jury selection, there was only one civilian witness involved, the trial was fairly brief and uncomplicated and there was no indication of how much of a continuance [Wills] would need." Still, "a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request." (*Windham*, *supra*, 19 Cal.3d at p. 128, fn. 5.) Wills made no showing of reasonable cause for the lateness of his

7

request.  He made his motion for self-representation on April 16, 2014, the day the court had scheduled the case for trial.  He was not prepared to go to trial and sought a continuance of unspecified length.  His attorney, on the other hand, was prepared to go to trial, and Wills had multiple pretrial opportunities to assert his right to represent himself, including the February 21 arraignment, the March 20 pretrial conference, and the April 10 pretrial conference.  (See *People v. Lynch*, *supra*, 50 Cal.4th at p. 726.)  Because Wills's motion for self-representation was untimely, the court had discretion to grant or deny it.  (See *Windham, supra,* 19 Cal.3d at p. 128, fn. 5.)

3. *The Trial Court Did Not Abuse Its Discretion in Finding That the* <u>*Windham*</u> *Factors Weighed Against Granting Wills's Untimely Motion for Self-Representation*

In ruling on an untimely motion for self-representation, a trial court must exercise its discretion in light of the factors identified in *Windham*.  (See *People v. Valdez* (2004) 32 Cal.4th 73, 103.)  Those factors include "the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion."  (*Windham*, *supra*, 19 Cal.3d at p. 128; accord, *People v. Lynch*, *supra*, 50 Cal.4th at p. 722, fn. 10.)

The trial court conducted the inquiry required by *Windham* and based its denial of Wills's motion on a balancing of the *Windham* factors.  The court found that Wills's frustration over the fact that he could not get an offer he wanted from the prosecution did not reflect any failing or fault on the part of counsel for Wills.  In fact, at the *Marsden* hearing six days earlier, the court had stated that counsel for Wills was "experienced and skilled," noting that counsel had tried "thousands of cases," "including dozens in this court."  At the hearing on the motion for self-representation, the court recognized Wills's earlier attempts to substitute counsel, saying, "I denied the *Marsden* motion a couple of times in this matter . . . ."  (See *Scott, supra,* 91 Cal.App.4th at p. 1205 [affirming the denial of a motion for self-representation where the defendant "made the *Faretta* motion

8

out of frustration at having his *Marsden* motion denied, rather than from a genuine desire to represent himself"].) The court also asked Wills the reasons for his request, and Wills explained that he wanted a different attorney but the court had denied his motions for new appointed counsel. Wills later told the court, "Before I wish to represent myself, I would like a new lawyer." The court noted, "Today is the day [the case] was set for trial." And when the court asked Wills if he was ready for trial, Wills said he was not. Under these circumstances the court did not abuse its discretion in considering the *Windham* factors and denying Wills's motion.[2]

Finally, Wills argues that the trial court erred by denying his motion to represent himself because the court suggested Wills had "emotional issues." But that is not what happened. The trial court denied Wills's request to represent himself not because the court determined that he was not competent to represent himself, but because the request was untimely and the *Windham* factors weighed against granting the motion, and because the request was not voluntary. The court did "note" that Wills's yellow jumpsuit and his pre-plea probation report suggested that he had emotional issues, but those emotional issues were not the basis for the court's denial of Wills's motion to represent himself.[3] In any event, even if the court had relied on perceived emotional issues in determining that Wills's request to represent himself was not voluntary, the trial court's denial of Wills's motion to represent himself was still not an abuse of discretion. (See *People v. Dent*

---

[2] The court also determined that Wills's motion for self-representation was involuntary because it was an alternative to an unsuccessful *Marsden* motion. Because the court did not abuse its discretion in denying Wills's untimely motion for self-representation, we need not determine whether the court erred in finding that Wills's motion for self-representation was not voluntary.

[3] Similarly, in the context of his motions for new appointed counsel to negotiate a deal involving probation and mental-health treatment instead of incarceration, Wills alluded to what he now describes as "unspecified mental health issues that he wanted to address in treatment." Wills argues that the trial court should not have relied on those allusions to deny his motion for self-representation. There is no evidence in the record, however, that the court denied Wills's motion based on his self-described mental health issues.

9

(2003) 30 Cal.4th 213, 218 [even if "the trial court denied the request [for self-representation] for an improper reason, if the record as a whole establishes defendant's request was nonetheless properly denied on other grounds, we would uphold the trial court's ruling"].)

B. *The Trial Court Did Not Have a Sua Sponte Duty To Conduct a Competency Examination After the Trial Court Denied Wills's Motion for Self-Representation*

Wills argues that the court should have conducted a competency evaluation under section 1368 to determine Wills's competency to stand trial because the court suggested the fact Wills was wearing a yellow jumpsuit indicated he had emotional issues.[4] According to Wills, the only evidence of incompetence was that he appeared "in a yellow jumpsuit, and any significance attached to that fact."

""""Both federal due process and state law require a trial judge to suspend trial proceedings and conduct a competency hearing whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial."""" (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 464.) "A trial court's decision whether or not to hold a competence hearing is entitled to deference, because the court has the opportunity to observe the defendant during trial." (*People v. Rogers* (2006) 39 Cal.4th 826, 847.) "The failure to declare a doubt and conduct a hearing when there is substantial evidence of incompetence, however, requires reversal of the judgment of conviction." (*Ibid.*)

Here, there was no evidence to raise a reasonable or bona fide doubt concerning Wills's competence to stand trial. Even if Wills had emotional issues, there was no

---

[4] Section 1368 provides: "If, during the pendency of an action and prior to judgment, . . . a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. . . . If counsel informs the court that he or she believes the defendant is mentally competent, the court may nevertheless order a hearing."

indication that he could not participate meaningfully in the proceedings. (See *People v. Mai* (2013) 57 Cal.4th 986, 1033-1034 ["anger, emotional volatility, [and] distrust of counsel" did not constitute substantial evidence of incompetence, despite evidence "that the [defendant's] emotional instability . . . sometimes caused him to be 'kind of irrational,' affected his 'ability to think clearly,' and made it difficult to obtain his cooperation"]; *Rogers*, *supra*, 39 Cal.4th at pp. 847-848 [evidence that the defendant was depressed and suicidal and "suffered some type of dissociative disorder . . . which possibly rose to the level of a multiple personality disorder" did not constitute substantial evidence of incompetence].)[5] Moreover, nothing in Wills's pre-probation report mentioned emotional issues that would suggest the need for a competency examination. In fact, in the pre-probation report, the probation officer noted there was "no indication or claim of significant physical/mental/emotional health problem." Where, as here, "the record discloses no substantial evidence that defendant was mentally incompetent," "the court did not err by taking no action to determine whether [he] was competent." (*People v. Hung Thanh Mai*, *supra*, 57 Cal.4th at p. 1036.)

C.  *Wills's Argument That He Received Ineffective Assistance of Counsel Fails Because the Evidence of Wills's Guilt Was Overwhelming*

When Nah retrieved her phone from Deputy Lampkin she was shown an image of Wills as a suspect. The same image was used in the six-pack photographic lineup created to identify the robber. Wills argues that Nah's identification of him was impermissibly suggestive, and that his attorney's failure to move to suppress the identification evidence constituted ineffective assistance of counsel.

---

[5]  After Wills's second motion to represent himself, the court asked counsel for Wills whether he had any thoughts on Wills's competence to represent himself. Counsel responded, "My conversations with him [have] never caused me concern that he was not competent to stand trial." "A trial court's expression of preliminary concerns about competency does not require the commencement of competency proceedings." (*People v. Price* (1991) 1 Cal.4th 324, 396-397; see § 1368.)

11

"'To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.'" (*People v. Johnson* (2015) 60 Cal.4th 966, 979-980; see *Strickland v. Washington* (1984) 466 U.S. 668, 694 [104 S.Ct. 2052, 80 L.Ed.2d 674].) "'"The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant. The proof . . . must be a demonstrable reality and not a speculative matter."'" (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1007, quoting *People v. Karis* (1988) 46 Cal.3d 612, 656.) "If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient." (*In re Crew* (2011) 52 Cal.4th 126, 150; accord, *People v. Mbaabu* (2013) 213 Cal.App.4th 1139, 1149; see *Strickland*, *supra*, 466 U.S. at p. 697 ["[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"].) On the issue of prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (*Strickland*, *supra*, 466 U.S. at p. 695; see *People v. Ledesma* (1987) 43 Cal.3d 171, 218.)

The evidence against Wills was overwhelming, with the only potentially controverting evidence Wills's equivocal testimony. Law enforcement found Nah's phone in Wills's pocket hours after it was taken from Nah. There was a video recording of the crime, which showed a man wearing the same clothes Wills was wearing when he was arrested,[6] with a backpack and hat matching the backpack and hat Wills had in his possession when he was arrested. Wills's testimony was that he had no memory of the

---

[6] Wills argues that "the clothes worn by the man pictured [in the video], a dark hat and dark shirt, are hardly so unique among the population in downtown Los Angeles, that wearing similar colors would be a distinguishing factor so as to allow for identification." The video, however, showed a man with a two-toned grey sweatshirt, with sleeves darker than the body of the sweatshirt, and Wills was arrested wearing a two-toned grey sweatshirt with black sleeves.

day, he "found" the iPhone somewhere, and he did not recognize anyone in the video or the backpack and hat that were with him when he was arrested. Thus, even if the court had excluded Nah's identification of Wills, the prosecution's case against Wills was so strong that there is no reasonable probability that the result would have been different.


## DISPOSITION


The judgment is affirmed.



SEGAL, J.


We concur:



PERLUSS, P. J.



ZELON, J.