Filed 8/27/24  P. v. Graham CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>JERRY LIKAERIE GRAHAM,<br>    Defendant and Appellant. | A167383<br><br>(Contra Costa County Super. Ct. No. 02003355328) |

Defendant Jerry Graham was charged with six counts, including two counts of human trafficking, forcible oral copulation, and forcible rape.  Over a month before trial began, Graham moved to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*), and the trial court denied the motion based on his failure to understand the exact nature of the charges against him and the maximum possible sentence to which he was exposed.  He was subsequently convicted by a jury on all counts, and sentenced to a total term of 66 years, 8 months to life.  Graham contends—and the Attorney General concedes—that the trial court erred in denying his *Faretta* motion.  We agree, and therefore reverse.

## BACKGROUND

On July 11, 2022, the Contra Costa County District Attorney filed an amended information charging Graham with human trafficking of a minor for

1

a sex act (Pen. Code[1], § 236.1, subd. (c)(1)) (count 1), human trafficking to commit another crime (§ 236.1, subd. (b)) (count 2), pandering by procuring (§ 266i, subd. (a)(1)) (count 3), forcible oral copulation (§ 287, subd. (c)(2)(A)) (count 4), forcible rape (§ 261, subd. (a)(2)) (count 5), and possession of a firearm by a felon (§ 29800, subd. (a)(1)) (count 6).  The information further alleged as an enhancement with respect to counts 4 and 5 that Graham had been previously convicted of a sexual offense (§ 667.61).  The information also alleged certain aggravating sentencing factors (Cal. Rules of Court, rule 4.421(a), (b)) and that Graham had suffered four prior serious or violent felony convictions (§§ 667, subds. (a), (d), (e), 1170.12, subd. (b)).[2]

On February 10, 2022, Graham moved for certain discovery under the California Racial Justice Act (§ 745, subd. (d)).  On March 29, the trial court denied the motion after a brief hearing, finding that the defense had not established a prima facie case that "defendant was charged or convicted of a more serious offense than defendants of other races, ethnicities, or natural origins."

On October 4, Graham filed a standard form titled "Advisement and Waiver of Right to Counsel (*Faretta* Waiver)."  He initialed boxes on the form certifying that he could read and write, and that he understood various of his constitutional rights, including his right to an attorney and his right to self-representation.  He indicated that he was 37 years old, had not graduated high school but had received a G.E.D., and had no legal education.  He initialed boxes indicating that he understood the 12 "dangers and disadvantages in representing myself" listed on the form.  He left blank

---

[1] Further undesignated statutory references are to the Penal Code.

[2] We omit any discussion of the facts underlying the charges because they are not relevant to our disposition of Graham's appeal.

questions 4 and 5, which stated "I understand that I am charged with the following crime(s)," and "I am aware of the consequences should I be convicted (maximum possible sentence)," and answered "No" to the next three questions, which asked "Do you know the crime(s) with which you are charged (is) (are) (general) (specific) intent crimes," "Do you know what facts have to be proved before you can be found guilty of the offense(s) charged," and "Do you know what the legal defenses are to the crime(s) with which you are charged?" Finally, he initialed boxes indicating "I understand that it is the advise and recommendation of this Court that I do not represent myself and that I accept court-appointed counsel," and "I understand all that I have read and all that the Court has told me. It is my personal desire that I be granted permission by the Court to proceed in propria persona." He signed and dated the form under a certification "that I have read, understood and considered all of the above warnings included in this petition, and I still want to represent myself. I freely and voluntarily give up my right to have a lawyer represent me."

A hearing on the motion was held that same day, in the course of which the following colloquy occurred:

"THE COURT: So Ms. Lorber [defense counsel] has informed the Court that you wanted to represent yourself. Right? So you've gone through this form that is necessary before the Court can grant your right to represent yourself, so I am going to put the case number on here, 2-335532-8.

"So I see on page one, you do understand all your rights to a trial, confront the witnesses, et cetera, I see that. You did not graduate from high school, but you got a G.E.D. You've initialed that you understand that some of the dangers of representing yourself. The problem I have is when we get down to number 4, charges and consequences. Number 4 says you

3

understand you're charged with the following crimes and it's blank. Number 5 states that you're aware of the consequences and the maximum possible sentence and that's also blank.

"So, what do you think you're charged with?

"THE DEFENDANT: I never received like the charges filed from the court, I only got what my lawyer sent to me that she typed up, so I really don't know exactly all my charges and my maximum exposure.

"THE COURT: Well, you need to know that if you're going to be you're [*sic*] own lawyer.

"THE DEFENDANT: Yeah, but I never got—I've been asking for the Amended Complaint and the actual, like, Amended Information after I went to prelim and I never got it. I just got something that was typed up by my lawyer, I never got the actual file from the Court.

"THE COURT: Well, you're not going to get the file, quote, unquote, from the Court, as you can see I don't have a file, I have everything's electronic. But I do have the current Information charging you with six offenses, which is pretty important for you to know what you're charged with; what do you—but what do you think you're charged with?

"THE DEFENDANT: I mean, I understand the pimping and pandering, human trafficking, I don't really remember all the rest of them.

"THE COURT: Well, those are—you are charged with those offenses, but you're also charged with very serious sexual offenses. You're charged with forcible oral copulation, forcible rape; either one of those charges can— carries a life sentence if you're convicted, either one. Possession of a firearm by a felon.

"What was your—what is your understanding—besides what I just said, what was your understanding of your maximum sentence?

"THE DEFENDANT: Well, I knew that—I knew that I was facing like maybe my third strike, but I don't know if it's life without, life with the possibility of parole, I didn't know that exactly.

"THE COURT: But you need to know that if you're representing yourself. I mean, you need to know exactly what you're charged with, exactly the range of sentences for each count, the maximum sentence you could get, and there are enhancements charged here. For the two sexual assault offenses, there's a special allegation under Penal Code Section 667.61(a)(d). And what does that mean to you?

"THE DEFENDANT: I don't necessarily know.

"THE COURT: Right. So, Mr. Graham, I totally understand that you are not happy with the way things are going in this case, but I cannot in good conscience allow you to represent yourself when you have no idea how serious this is. You have no idea what the charges are, according to your own statement, other than human trafficking and pimping and pandering. You have no idea of the maximum sentence you could get or how to defend against it. I can't—I mean, it's like throwing—it's like throwing you to the wolves. You're going to be up against a very experienced had [*sic*] District Attorney who does know what you're charged with and what the maximum consequences are, I just can't. I can't—I could not live with myself if I let you represent yourself when you don't even know what you're charged with.

"THE DEFENDANT: Well, ma'am, I feel as though I'm already, as you say, like thrown to the wolves anyway. So I feel as if I were to represent myself then and you give me time to I can learn those type of things, I can learn it, and then I can represent myself.

"THE COURT:  Question number 6, do you know if the crimes which you're charged with are general or specific intent crimes?  You don't even say—you mark 'no,' you don't know.

"Do you know what facts have to be proved before you can be found guilty of the charges?  You checked 'no.'

"Do you know what the legal defenses are to the crimes for which you're charged?  You checked 'no.'

"You don't know anything about your charges or what the specific elements of the crime or the consequences, so I'm denying your Feretta [*sic*].  I mean, I'm denying it.  I can't in good conscience let you represent yourself when you don't have a clue about what you're facing.  So the Feretta [*sic*] is denied.

"THE DEFENDANT:  Your Honor, it's not my fault that I don't understand, that's what I'm saying.  If I get some time and I get the right research, I can understand what I'm facing.  It's not really my fault.  I've been asking to find—that's why—that's the whole reason why I'm asking to represent myself right now because I feel as though that I'm already representing myself.  I been ask—I been left—I feel like I'm being left in the blind this whole process.  I've been asking for my full discovery, I haven't received it.

"I've been—

"THE COURT:  Okay. Mr. Graham, I'm—I'm stopping you right there because now it's beginning to sound like a [*People v.*] *Marsden* [(1970) 2 Cal.3d 118 (*Marsden*)] motion.  Which I think that it was on calendar once before for a *Marsden*, wasn't it?

"THE DEFENDANT:  No.

"MS. LORBER:  I think possibly.

6

"THE DEFENDANT: No, I never filed—I never asked for a *Marsden* motion.

"THE BAILIFF: It hasn't been this case, I don't believe, Your Honor.

"THE COURT: All right. Well, I'm not going to hear a *Marsden* motion with the District Attorney in here.

"But getting back to you representing yourself, this case has been going on for a while now. Let's see when you were arraigned.

(Her Honor is looking at electronic file.)

"THE COURT: Okay. You were arraigned on this case on December 9th of 2021. So you've had almost ten months, more than that, to find out what you're charged with and what the consequences are. You are not the only person in the jail who, you know, requests to represent yourself, but the people who request to represent themselves, they spend time in the jail finding out what they're charged with, what the consequences are, what the elements of the crime are, so then when they come in front of the judge they can say I'm charged with X, Y, and Z, I know these are the consequences; those are the people that get to represent themselves. You in not nearly, whatever, ten months haven't taken the time to do that for yourself. So if you haven't taken the time to do that for yourself in all those months—

"THE DEFENDANT: I've been asking, ma'am, Your Honor.

"THE COURT: Mr.—Mr. Graham, that is not the operative thing here. If you really wanted to represent yourself, you'd put in one of those written inmate requests for the law library to send you information on these charges and say send you information on the sentencing for these charges. Believe me, if you really wanted to represent yourself, you would be coming to court with all that knowledge and information already. So this isn't really so much about you wanting to represent yourself as it is that you're unhappy with the

7

whole situation—which I get—but for me to say you who know nothing about your case is going to represent yourself at trial, no. The answer is no."

Graham next made an oral *Marsden* motion. After the prosecutor exited the courtroom, Graham explained:

"THE DEFENDANT: Your Honor, I just honestly believe that my rights is being violated, honestly. I feel that's—I believe that my rights are being violated being the fact that I'm not able to represent myself and the reason why I want to represent myself is because I've been asking for this information from my attorney for a while as far as my discovery, as far as being more transparent with me with what's going on with my case. I had it—I asked for it, the actual Amended Information that was filed by the Court, not the actual file of the court, I'm asking for the Amended Information that was filed by the Court, which the stamp of this says 'filed,' is that it's something that was typed up by my lawyer that says the charges and the exposure. That's what I was asking for, I haven't received that. I haven't received my full discovery. [¶] . . . [¶]

"So I feel like, if anything, that's ineffective assistance of counsel because we wouldn't be sitting here right now if I knew what was—what actually I was pleading to at the moment I was signing this deal, so it's just—it's a lot going on in my case that I don't even know about. That's why I'm saying if you give me a time to represent myself, then I can find out—I feel like I'm already thrown to the wolves, I could find out—I could do it—I could just do it on my own, if that's the case. I can just read and do it—I know how to read, I know how to write, I know how to spell, so all I need is time. I could find out all these things about my case, things I've been asking the attorney to tell me and I haven't been really getting nowhere, so . . . "

Graham's counsel then responded, and agreed that "I have not given him a copy of the Amended Information because I don't believe he's entitled to that. Instead what I did was wrote out bullet points of every single count with each one's triad, including the enhancements. And I attached language—or I included language that stated the consequences of all those charges and enhancements so that he could see each individual charge and what each one carried, because this is a case where the maximum is—that Mr. Graham's facing up to life but it's in multiple different ways because there's the strike issue and there's also those enhancements. So to make it clear just for reading purposes, that's what I did instead of giving him a copy of the Information, but we have discussed the potential consequences."

Graham stated that the last time he came to court in July, he did so to "sign a deal" and plead guilty to human trafficking in exchange for a sentence of 22 years. However, because that sentence included an upper term and because of recent changes in the law requiring that the upper term be imposed only based on aggravating circumstances found true by the finder of fact or stipulated to by the defendant (see § 1170, subd. (b)(1) & (2), as amended by Stats. 2021, ch. 731, § 1), upon arrival Graham learned that he would have to also admit to an aggravating circumstance. Graham became confused and "said I d[o]n't know what's going on, this is the first time [I'm] hearing this." In part because he had previously entered a plea in another case in which he received a sentence that he did not expect, Graham ultimately did not change his plea and the prosecution withdrew the offer.

After a further discussion of Graham's lack of communication with the private investigator working on his case, the trial court denied Graham's *Marsden* motion, and again rejected his request to represent himself:

9

"Now, circling back to your yet again requesting to represent yourself. Mr. Graham, if you want—really wanted to represent yourself, you would be taking the bull by the horns and you would be getting this information yourself and not relying upon Ms. Lorber and the Public Defender's Office. You have access to the law library, you just need to put in a written request and you ask for the information and they copy it and they send it to you, they do that all the time—

"THE DEFENDANT:  And I will do that.

"THE COURT:  Okay.  But you haven't done it in 11 months, so that suggests to me that you really aren't desiring to represent yourself—

"THE DEFENDANT:  I just now want to represent myself now, that's why I haven't did it then.

"THE COURT:  I'm not going to be continuing the trial that's been continued once before for you all of a sudden to decide you want to be the one to represent yourself.  I'm telling you that what you have wanted is you have wanted this to be given to you on a silver platter and when it wasn't, then you say you don't know what's going on.  If you really wanted to represent yourself, you would have done something in these 10 or 11 months to get that information yourself, like what exactly am I charged with, what are the consequences of this, what are the elements of the crime, is this a general or specific intent crime—you said you didn't know any of that, so I as a judge cannot grant your request to represent yourself on that record.  I can't.

"So the *Marsden* is denied and we're just confirming the trial for right now."

Trial began with opening statements on November 7, and continued over approximately eight court days.

On November 22, the jury found Graham guilty on all six counts, and found true the prior conviction allegations with respect to counts 4 and 5. On November 28, the jury found the true the aggravating sentencing factors. The trial court later sentenced Graham to an indeterminate term of 50-years-to-life and a determinate term of 16 years, 8 months, for a total term of 66 years, 8 months to life.

Graham filed a notice of appeal.

## DISCUSSION

Graham argues that the trial court erred in denying his motion to represent himself under *Faretta* and in denying his motion for discovery under the Racial Justice Act. Because we agree with the first argument, we need not reach the second.

In *Faretta*, *supra*, 422 U.S. 806, the Supreme Court held that under the Sixth Amendment, a defendant in a criminal case "has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so." (*Faretta*, *supra*, 422 U.S. at p. 807.) Under *Faretta*, "[a] trial court must grant a defendant's request for self-representation if three conditions are met. First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.] Third, he must make his request within a reasonable time before trial. [Citations.] *Faretta* error is reversible per se. [Citations.]" (*People v. Welch* (1999) 20 Cal.4th 701, 729 (*Welch*).)

The Attorney General concedes that the trial court erred in denying Graham's *Faretta* motion, error requiring that we reverse the judgment. We agree.

11

Here, Graham made his request to represent himself knowingly, intelligently, and unequivocally. He initialed all the boxes on the court's *Faretta* form indicating he understood the seven constitutional rights listed, including his right to an attorney and his right to self-representation, as well as all 12 of the listed "dangers and disadvantages to self-representation." Throughout the hearing on his *Faretta* motion and the *Marsden* hearing that immediately followed, he remained unequivocal that he wished to represent himself. And his request was made at what was apparently Graham's first opportunity to address the court since the collapse of plea bargain negotiations, and over a month before his trial actually began. (See *People v. Johnson* (2019) 8 Cal.5th 475, 500 ["a trial court may consider the totality of the circumstances in determining whether a defendant's pretrial *Faretta* motion is timely"]; *People v. Windham* (1977) 19 Cal.3d 121, 128, fn. 5 ["[w]hen the lateness of the request [for self-representation] and even the necessity of a continuance can be reasonably justified the request should be granted"].)

The trial court based its denial of Graham's *Faretta* motion entirely on his failure to fully understand the precise nature of all the charges against him, despite that the record makes clear that failure was largely the result of his counsel's inexplicable failure to provide him with a copy of the operative information. The law is well-established that this was error. (See, e.g., *Welch, supra,* 20 Cal.4th at p. 733 ["the trial court may not ascertain a defendant's competence to waive counsel by evaluating the *ability* to represent himself or herself"]; *People v. Best* (2020) 49 Cal.App.5th 747, 760 ["We recognize that [defendant] did not understand such concepts as specific intent and general intent, but her ignorance of legal procedure and language is not a basis to deny her the right to self-representation"]; *People v. Silfa*

12

(2001) 88 Cal.App.4th 1311, 1321–1323 [form used by the court "is not designed as a test that a defendant seeking self-representation must pass" and where defendant "fully understood and appreciated there were deficiencies in his understanding of the law pertaining to his case, but wanted to represent himself . . . [i]t was error to deny him that right"]; *People v. Joseph* (1983) 34 Cal.3d 936, 943 [" 'It is not, however, essential that defendant be competent to serve as counsel in a criminal proceeding [citation]; "his technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself" ' "]; *People v. Windham*, *supra*, 19 Cal.3d at p. 128 ["a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be"].)

## DISPOSITION

The judgment is reversed.

_____

Richman, J.

We concur:

_____

Stewart, P.J.

_____

Miller, J.

*P. v. Graham* (A167383)